1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAUL HASTINGS LLP
ELENA R. BACA (SB# 160564)
elenabaca@paulhastings.com
JENNIFER MILAZZO (SB# 318356)
jennifermilazzo@paulhastings.com
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
Telephone:   (213) 683-6000
Facsimile:    (213) 627-0705

PAUL HASTINGS LLP
RYAN D. DERRY (SB# 244337)
ryanderry@paulhastings.com
101 California Street, 48th Floor
San Francisco, CA  94111
Telephone:   (415) 856-7000
Facsimile:    (415) 856-7100

Attorneys for Defendant
FAMILY DOLLAR, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPHINE PERFECTO, MARK BOULDIN, YVETTE SIMMONS, ASHLEY LEE, DANIEL MENJIVAR, CRYSTAL STALLINGS, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FAMILY DOLLAR, INC., a North Carolina corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-CV-01410-GW-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**<br><br>Date:         June 2, 2022<br>Time:         9:00 a.m.<br>Courtroom:  9D<br>Judge:        George H. Wu<br><br>Complaint Filed:  December 29, 2021 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION/SUMMARY OF ARGUMENT .......................................7

II.   FACTUAL AND PROCEDURAL BACKGROUND.................................8

    A.    Plaintiffs Each Agreed Under The FAA To Arbitrate Claims
          Against Family Dollar On An Individual Basis................................8

          1.    Menjivar And Perfecto Each Agreed To Mutual
                Arbitration Through The Taleo Onboarding Process At
                Hire. ...........................................................................................8

          2.    Lee, Simmons, And Stallings Each Agreed To An
                Updated Mutual Arbitration Agreement As Of December
                2020. .........................................................................................9

    B.    Plaintiffs Filed Their Claims In The Wrong Forum And Refuse
          To Stipulate To Arbitration................................................................11

III.  THIS COURT SHOULD COMPEL ARBITRATION................................12

    A.    The FAA Requires Enforcement Of Arbitration Agreements
          According To Their Terms. .................................................................12

    B.    The Arbitration Agreements Cover Plaintiffs' Statutory Wage-
          And-Hour Claims................................................................................13

    C.    The Arbitration Agreements Are Enforceable....................................15

          1.    The Arbitration Agreements Are Enforceable Contracts
                Under Ordinary Contract Formation Principles. ......................15

          2.    The Arbitration Agreements Are Not Unconscionable............17

                a.    California's Unconscionability Test. .............................17

                b.    The Arbitration Agreements Are Not Substantively
                      Unconscionable. .............................................................18

                c.    The Arbitration Agreements Are Not Procedurally
                      Unconscionable. .............................................................20

                d.    The Arbitration Agreements Therefore Are
                      Enforceable....................................................................22

IV.  The PAGA Claim Should Be Stayed ..........................................................24

V.   CONCLUSION ...........................................................................................26

DEF.'S MEMO. POINTS & AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION
AND STAY ALL PROCEEDINGS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .................................................................................. 12

*Alvarez v. AutoZone, Inc.*,
No. EDCV 14-02471-VAP, 2015 WL 13427751
(C.D. Cal. July 8, 2015)............................................................................. 24

*Am. Software, Inc. v. Ali*,
46 Cal. App. 4th 1386 (1996)..................................................................... 18

*Ambler v. BT Ams. Inc.*,
964 F. Supp. 2d 1169 (N.D. Cal. 2013)...................................................... 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000)...............................................................17, 18, 19, 23

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................................................................................. 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ............................................................................ 13, 14

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016)............................................................17, 18, 20, 22

*Chamber of Com. Of U.S. v. Becerra*,
438 F. Supp. 3d 1078 (2020)..................................................................... 20

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)................................................................... 15

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002).............................................................. 16, 22

*Clark v. Dollar Tree Stores, Inc.*,
San Bernardino Superior Court Case No. CIVSB2131354 ............................ 15

*Cobarruviaz v. Maplebear, Inc.*,
143 F. Supp. 3d 930 (N.D. Cal. 2015)........................................................ 25

*Craig v. Brown & Root, Inc.*,
84 Cal. App. 4th 416 (2000) ...................................................................... 16

*Crippen v. Cent. Valley RV Outlet, Inc.*,
124 Cal. App. 4th 1159 (2004)................................................................... 22

*Cruise v. Kroger Co.*,
  233 Cal. App. 4th 390 (2015) ..................................................................... 16

*D.C. v. Harvard-Westlake Sch.*,
  176 Cal. App. 4th 836 (2009) ..................................................................... 23

*Davis v. Nordstrom, Inc.*,
  755 F.3d 1089 (9th Cir. 2014) ..................................................................... 12

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................. 12, 14

*DIRECTV, Inc. v. Imburgia*,
  577 U.S. 47 (2015) ..................................................................................... 15

*Dotson v. Amgen, Inc.*,
  181 Cal. App. 4th 975 (2010) ................................................................ 19, 23

*Eshagh v. Terminix Int'l Co., L.P.*,
  588 F. App'x 703 (9th Cir. 2014) ............................................................... 14

*Gatton v. T-Mobile USA, Inc.*,
  152 Cal. App. 4th 571 (2007) ..................................................................... 24

*Graham v. Scissor-Tail, Inc.*,
  28 Cal. 3d 807 (1981) ................................................................................. 17

*Iskanian v. CLS Transp., L.A., LLC*,
  59 Cal. 4th 348 (2014) .......................................................................... 24, 26

*Jacobson v. Snap-on Tools Co.*,
  No. 15-cv-02141-JD, 2015 WL 8293164
  (N.D. Cal. Dec. 9, 2015) ............................................................................. 25

*Jenkins v. Sterling Jewelers, Inc.*,
  No. 17cv1999-MMA (BGS), 2018 WL 922386
  (S.D. Cal. Feb. 16, 2018) ............................................................................ 25

*Kilgore v. KeyBank Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013) (*en banc*) ................................................. 12

*Kinney v. United HealthCare Servs., Inc.*,
  70 Cal. App. 4th 1322 (1999) ..................................................................... 20

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) .............................................................................. 20

*Magpali v. Dollar Tree Stores, Inc.*,
  Kern County Superior Court Case No. BCV-21-101-346 BCB ................. 15

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
     89 Cal. App. 4th 1042 (2001)..........................................................................18, 23

*Morris v. Redwood Empire Bancorp*,
     128 Cal. App. 4th 1305 (2005).................................................................................23

*Narez v. Macy's W. Stores, Inc.*,
     No.16-cv-00936-LHK, 2016 U.S. Dist. LEXIS 99792
     (N.D. Cal. July 28, 2016).........................................................................................25

*Nguyen v. Applied Med. Res. Corp.*,
     4 Cal. App. 5th 232 (2016)........................................................................................12

*Oto, L.L.C. v. Kho*,
     8 Cal. 5th 111 (2019), *cert. denied*
     141 S. Ct. 85 (2020) .................................................................................................21

*Pac. Corp. Grp. Holdings, LLC v. Keck*,
     232 Cal. App. 4th 294 (2014)....................................................................................16

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
     55 Cal. 4th 223 (2012).......................................................................................17, 22

*Robertson v. Family Dollar, Inc.*,
     Kern County Superior Court Case No. BCV-20-101591.........................................15

*Roman v. Superior Court*,
     172 Cal. App. 4th 1462 (2009)...........................................................................21, 23

*Rosenthal v. Great W. Fin. Sec. Corp.*,
     14 Cal. 4th 394 (1996).......................................................................................16, 17

*Sakkab v. Luxottica Retail N. Am., Inc.*,
     803 F.3d 425 (9th Cir. 2015).....................................................................................24

*Sanchez v. Valencia Holding Co., LLC*,
     61 Cal. 4th 899 (2015)..............................................................................................18

*Serpa v. Cal. Sur. Investigations, Inc.*,
     215 Cal. App. 4th 695 (2013)....................................................................................23

*Shepardson v. Adecco USA, Inc.*,
     No. 15-cv-05102-EMC, 2016 U.S. Dist. LEXIS 46754
     (N.D. Cal. Apr. 5, 2016)...........................................................................................25

*Snipes v. Dollar Tree Distribution, Inc.*,
     USDC Eastern District of California
     Case No. 2:15-cv-00878-MCE-DB ...........................................................................15

*Sonic-Calabasas A, Inc. v. Moreno*,
    57 Cal. 4th 1109 (2013)............................................................................18

*Stolt-Nielsen S.A. v. AnimalFeeds Internat'l Corp.*,
    559 U.S. 662 (2010) ............................................................................26

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal. App. 3d 208 (1990), *overruled on other grounds by*
    *Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996).........................................................................16

*Taft v. Henley Enters., Inc.*,
    No. SACV 15-1658-JLS, 2016 WL 9448485
    (C.D. Cal. Mar. 2, 2016).......................................................................25

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 734 (2021) .....................................................................*passim*

**STATUTES**

9 U.S.C. § 1 (FEDERAL ARBITRATION ACT (FAA)).................................*passim*

9 U.S.C. § 3........................................................................... 7, 13, 24

9 U.S.C. § 4 ..................................................................................12

CAL. CIV. CODE § 1550 ....................................................................15

CAL. EVID. CODE § 641 ....................................................................16

CAL. LAB. CODE § 432.6 ...................................................................20

CAL. LAB. CODE § 2698 (PRIVATE ATTORNEYS GENERAL ACT (PAGA) .........*passim*

CAL. LAB. CODE § 2699(c) .................................................................24

**RULES**

FED. R. APP. PROC. 41(a)(1)(A)(ii)..........................................................7

JAMS R. 7....................................................................................19

JAMS R. 11(b)................................................................................14

JAMS R. 17 (a)-(b)...........................................................................19

JAMS R. 24(h)................................................................................19

**REGULATIONS**

Order, No. 20-15291 (9th Cir. Feb. 14, 2022)...........................................20

## I.      INTRODUCTION/SUMMARY OF ARGUMENT

Plaintiffs Ashley Lee, Daniel Menjivar, Josephine Perfecto, Yvette Simmons, and Crystal Stallings ("Plaintiffs") improperly filed claims against Defendant Family Dollar, Inc. ("Family Dollar") in court versus arbitration—where each agreed such claims would proceed.  Specifically, for alleged wage-and-hour violations, Plaintiffs plead nine putative class claims, and Lee plead a representative action under the California Private Attorneys General Act, California Labor Code section 2698, *et seq*. ("PAGA"),[1] on behalf of themselves and all non-exempt California Associates of Family Dollar.

Plaintiffs, however, all entered into at least one mutual and enforceable arbitration agreement, governed by the Federal Arbitration Act, 9 USC section 1, *et seq*., ("FAA"), that covers their putative class claims and requires that they pursue arbitration on their individual behalf only.  Those arbitration agreements are each enforceable under California law.  Indeed, similar arbitration agreements have been enforced by multiple courts in California before.  *See* Request for Judicial Notice, filed concurrently herewith ("RJN"), Exs. A through H.  Plaintiffs never should have filed these claims in court and cannot proceed here.

Similarly, given that Plaintiffs' individual claims must proceed in arbitration, Lee's claim under PAGA shall be stayed.  *First*, a stay is required under Section 3 of the FAA (9 U.S.C. § 3).  *Second*, the United States Supreme Court is presently considering (in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 734 (2021)) whether, under the FAA, a bilateral arbitration agreement bars an employee from raising a representative claim, including under PAGA.  That decision could direct whether the PAGA claim, like Plaintiffs' putative class claims, can proceed here.

---

[1] On May 5, 2022, Plaintiffs filed a Stipulation of Dismissal Pursuant to FRCP 41(a)(1)(A)(ii), dismissing (i) the entire action as to Plaintiff Mark Bouldin; and (ii) the tenth claim for relief as to Plaintiffs Josephine Perfecto, Yvette Simmons, Daniel Menjivar, and Crystal Stallings. (Dkt. No. 15.)  That means only Plaintiff Lee is asserting the tenth claim for relief under PAGA.

DEF.'S MEMO. POINTS & AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION
AND STAY ALL PROCEEDINGS

Accordingly, Family Dollar respectfully requests that the Court grant this Motion and: (i) compel each of the Plaintiffs to arbitration for their first through ninth claims for relief; (ii) dismiss the class claims; and (iii) stay the tenth claim for relief under PAGA, pending completion of individual arbitrations or until *Viking River Cruises* directs a different result.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiffs Each Agreed Under The FAA To Arbitrate Claims Against Family Dollar On An Individual Basis.

Family Dollar, an indirect subsidiary of Dollar Tree, Inc. ("Dollar Tree'"), is a variety retailer that sells goods nationwide through its retail store locations across the United States, including throughout California.   Declaration of Vince Votta ("Votta Decl."), ¶ 2.   All five Plaintiffs and Family Dollar are bound by at least one of three arbitration agreements (collectively, "Arbitration Agreements").

#### 1.   Menjivar And Perfecto Each Agreed To Mutual Arbitration Through The Taleo Onboarding Process At Hire.

Daniel Menjivar and Josephine Perfecto, hired January 10, 2018 and February 23, 2019, respectively, each agreed to arbitration at hire.   Votta Decl., ¶¶ 14-16, 21, Exs. A, F.   At the time Family Dollar hired Menjivar and Perfecto, it presented prospective Associates with the then-operative 2016 "Mutual Agreement to Arbitrate Claims" (the "2016 Arbitration Agreement") through the Taleo onboarding process. Votta Decl., ¶¶ 7-13.

Specifically, on Menjivar's and Perfecto's respective dates of hire, one of the screens in the Taleo onboarding was titled "Open Door & Arbitration."   Votta Decl., ¶ 8, Exs. A, C.   The Taleo screens explained, in part:   "The next step in the process involves your review of the Open Door Guidelines and your electronically signing the Mutual Agreement to Arbitrate Claims."   *Id*.   Menjivar and Perfecto, like all prospective Associates, were prompted to choose to view the documents in English or Spanish. *Id*.   Both selected English.   *Id*.

-8-

Taleo then presented Menjivar and Perfecto with a letter describing Family Dollar's "Open Door Guidelines" and arbitration program, and then provided a copy of the 2016 Arbitration Agreement.  Votta Decl., ¶¶ 9, 11, Exs. A, F.  Above the electronic signature box, the 2016 Arbitration Agreement stated:

> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

Votta Decl., ¶ 27, Exs. F, H.

Menjivar and Perfecto, like other prospective Associates who chose to agree to arbitration, were required to enter the last four digits of their social security number to confirm their identity and click "Continue" to acknowledge, agree, and proceed to the next screen.  Votta Decl., ¶ 13.  Menjivar did so and agreed to the 2016 Arbitration Agreement on January 10, 2018.  Votta Decl., ¶ 14-15, Ex. A.  Perfecto also did so and agreed to the 2016 Arbitration Agreement on February 23, 2019.  Votta Decl., ¶ 21, Ex. F.

The 2016 Arbitration Agreement clearly states that the FAA governs its interpretation and enforcement.  Votta Decl., ¶¶ 16-17, Exs. F and H at p. 1.  As part of their agreements, Menjivar and Perfecto also agreed to "bring any dispute in arbitration on an individual basis only, and not on a class or collective basis."  Votta Decl., ¶¶ 16-17, Exs. F and H at p. 2.

## 2. Lee, Simmons, And Stallings Each Agreed To An Updated Mutual Arbitration Agreement As Of December 2020.

In October 2020, Family Dollar updated its company-wide mutual arbitration agreement (the "2020 Arbitration Agreement").  Family Dollar notified Associates of the 2020 Arbitration Agreement by:  (i) including an announcement on Associates' wage statements;  (ii) mailing a copy to each Associate's home address; and

(iii) posting flyers in each store.  *See* Declaration of Ryan D. Derry, filed concurrently herewith ("Derry Decl."), ¶¶ 2-5, Ex. A (Affidavit of Ronald DiBianca ("DiBianca Aff."), ¶ 4)[2]; Declaration of Melissa Tutton ("Tutton Decl."), ¶ 3, Exs. A-C; Broel Decl., ¶¶ 18-25.   Lee, Simmons, and Stallings were each informed of the 2020 Arbitration Agreement through these methods.[3]  Specifically:

- Wage statements for pay periods between October 18, 2020 and November 14, 2020, announced:  "New arbitration agreement applies to associates employed on December 10, 2020."  *See* Tutton Decl., ¶ 3, Exs. A-C.  Lee, Simmons, and Stallings each received wage statements with this announcement.  *Id*.

- Family Dollar engaged a third-party company, Toppan Merrill, to prepare and send packets to Dollar Tree's employees, containing the 2020 Arbitration Agreement and FAQS about the arbitration program (in both English and Spanish).  Derry Decl., ¶¶ 2-5, Ex. A at 6 (DiBianca Aff., at ¶¶ 2; 4).  On October 23, 2020, Toppan Merrill mailed these packets, containing the 2020 Arbitration Agreement, via first class mail, postage prepaid to the home addresses of Associates of Family Dollar (and Dollar Tree), including Lee, Simmons, and Stallings.  Derry Decl., ¶¶ 2-5, Exs. A, B (DiBianca Aff., ¶ 4; Ex. B.)

- Family Dollar also posted flyers in the break room of its stores announcing the 2020 Arbitration Agreement.  Broel Decl., ¶ 20.  At least one flyer was

---

[2] The Affidavit of Ronald DiBianca is attached as Exhibit A to the Declaration of Ryan D. Derry, filed concurrently herewith.
[3] In addition to accepting the 2020 Arbitration Agreement, Lee also agreed to a 2013 Arbitration Agreement, on October 18, 2013.  *See* Broel Decl., ¶ 17, Ex. G. Simmons and Stallings each agreed to the 2016 Arbitration Agreement.  Stallings agreed during her onboarding on December 8, 2018.  Votta Decl., ¶¶ 16, 20, Ex. E. Simmons agreed twice—on January 27, 2020, during her application process, and on March 6, 2020, during onboarding.  Votta Decl., ¶¶ 16, 22-23, Exs. G and M.

posted in Lee's, Simmons's, and Stallings's stores.  Broel Decl., ¶¶ 20-25, Exs. I-K.

Like the 2016 Arbitration Agreement and 2013 Arbitration Agreement before it, the 2020 Arbitration Agreement expressly stated that it shall be governed by the FAA.  Derry Decl., ¶¶ 2-5, Ex. A (DiBianca Aff., ¶ 4, Ex. A).  The 2020 Arbitration Agreement also provides:  "To the maximum extent allowable by law, Associate and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis."  Derry Decl. ¶¶ 2-5, Ex. A at 16 (DiBianca Aff., ¶ 4, Ex. A, at p. 10 of 28, § 5).  As the packets and flyers explained, the 2020 Arbitration Agreement applied to Family Dollar and all Associates who were employed as of December 10, 2020.  *See* Derry Decl. ¶¶ 2-5, Ex. A at 6 (DiBianca Aff., ¶ 2).

### B.   **Plaintiffs Filed Their Claims In The Wrong Forum And Refuse To Stipulate To Arbitration.**

In violation of their respective agreements to arbitrate, on December 29, 2021, Plaintiffs filed this lawsuit in Los Angeles County Superior Court (from which Family Dollar then removed), alleging ten claims for relief for purported wage-and-hour violations for:  (1) failure to provide required meal periods; (2) failure to provide required rest periods; (3) failure to pay overtime; (4) failure to pay minimum wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7) failure to furnish accurate and itemized wage statements; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (9) unfair and unlawful business practices; and (10) the PAGA claim.  *See* Dkt. No. 3 at Ex. A.

On March 10, 2022, Family Dollar advised Plaintiffs of the existence of the Arbitration Agreements.  Derry Decl., ¶ 7.  Family Dollar shared copies of the Arbitration Agreements to which each of the Plaintiffs agreed and asked Plaintiffs to agree to proceed in arbitration.  *Id*.  Plaintiffs have refused.  *Id*.

## III.   **THIS COURT SHOULD COMPEL ARBITRATION**

Binding arbitration agreements cover the claims asserted here by Plaintiffs.

### A.   **The FAA Requires Enforcement Of Arbitration Agreements According To Their Terms.**

The FAA permits a party to a written arbitration agreement to petition for an order compelling the parties to arbitrate.[4]  9 U.S.C. § 4.  The FAA "reflects a 'liberal federal policy favoring arbitration,'" and requires courts to enforce arbitration agreements "according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 347 n.6 (2011) (citation omitted); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting *Concepcion*, 563 U.S. at 339). Accordingly, a court's role in hearing a motion to compel arbitration is limited: "Under the FAA, the role of the . . . court is to determine if a valid arbitration agreement exists, and if so, whether the agreement encompasses the dispute at issue." *Id*. at 1092 (citing *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1057-58 (9th Cir. 2013) (*en banc*)).

Where a dispute falls within the scope of a valid arbitration agreement, the FAA requires courts to direct the parties to arbitrate (*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)), and stay all proceedings pending arbitration:

> [T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the

---

[4] The minimal nexus to interstate commerce required by the FAA amply exists here.  Plaintiffs were engaged in selling consumer goods for Family Dollar—a national retailer.  Votta Decl., ¶ 2.  Moreover, as Associates, Plaintiffs were involved in the sale of goods and supplies transported from states other than California.  *Id.*  The FAA therefore applies.  *See, e.g.*, *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 246 (2016) (where employer sold and distributed products nationally and plaintiff worked on production line – contract fell within scope of FAA); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-75 (1995) (finding FAA applied to arbitration clause in retail termite-extermination contract for one residence; construing "involving [interstate] commerce" as being the "functional equivalent of 'affecting [commerce]'").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

## B. The Arbitration Agreements Cover Plaintiffs' Statutory Wage-And-Hour Claims.

An order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).  Here, the 2013 Arbitration Agreement, 2016 Arbitration Agreement, and 2020 Arbitration Agreement apply to Plaintiffs' first through ninth claims for relief for alleged violations of California wage and hour laws:

| Covered Claims | |
|---|---|
| 2013 | "(vii) claims under federal or state law regarding wages (including without limitation claims for pay, minimum wage and overtime), wage penalties, meal and rest breaks, classification, reimbursement of expenses, compensation, stock or incentive bonus plans, or intellectual property rights and associated laws." Broel Decl., ¶ 9, Ex. B, § 2. |
| 2016 | "Claims subject to arbitration include, but are not limited to, claims for:  overtime, misclassification as to exempt status, breaks, meal periods, expense reimbursement, pay for bank runs, off the clock work, wages, or other compensation; work conditions, including seating; breach of contract or covenant (express or implied); . . . or violation of any federal, state, local, or other governmental law, statute, rule, regulation, or ordinance." Votta Decl., ¶¶ 16-17, Exs. F and H at 1. |
| 2020 | "Claims subject to arbitration include, but are not limited to, claims for:  overtime, misclassification as to exempt status, breaks, meal periods, expense reimbursement, pay for bank runs, off the clock work, wages, or other compensation; work conditions, including seating; breach of contract or covenant (express or implied); . . . or violation of any federal, state, local, or other governmental law, statute, rule, regulation, or |

| Covered Claims | |
|---|---|
| | ordinance." Derry Decl. ¶¶ 2-5, Ex. A at 14 (DiBianca Aff., ¶ 2, Ex. A, at p. 8 of 28, § 2). |

Even if there were some doubt about the foregoing (there should not be), upon concluding that the parties entered into a binding contract, any ambiguity must be compelled and decided by the arbitrator. Normally, in considering the enforceability of an arbitration agreement, the court is charged with determining gateway issues. *Dean Witter*, 470 U.S. at 218; *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014). However, there is an exception when "the parties clearly and unmistakably provide otherwise," including by agreeing to delegate those issues to an arbitrator. *AT&T Techs., Inc.*, 475 U.S. at 649. Here, the Parties agreed the arbitrator would decide all disputes.[5] Therefore, even if Plaintiffs were to challenge the applicability, validity, or enforceability of the Arbitration Agreements to the first through ninth claims for relief, the Court must compel arbitration of any such dispute.

---

[5] The 2013 Arbitration Agreement expressly states, "[C]overed Disputes include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Agreement or any portion of the Agreement is void or voidable, with the exception noted in section 7, below, the 'Class Action Waiver.'" Broel Decl., ¶ 8, Ex. A, § 2. The parties to the 2016 Arbitration Agreement expressly agreed that "the arbitration shall be held in accordance with the then-current JAMS Employment Arbitration Rules & Procedures (and no other rules)." Votta Decl., ¶¶ 16-17, Exs. F and H at p. 1. The JAMS Rules—referenced and incorporated throughout the 2016 Arbitration Agreement—delegate all threshold questions to the Arbitrator: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." *See* Derry Decl., ¶ 6, Ex. C (JAMS Employment Arbitration Rule 11(b)). The 2020 Arbitration Agreement states, "The arbitrator shall have the exclusive authority to resolve any disputes or claims regarding arbitrability or the formation, interpretation, validity, applicability, unconscionability, or enforceability of this Agreement." Derry Decl. ¶¶ 2-5, Ex. A at 15 (DiBianca Aff., ¶ 2, Ex. A at p. 9 or 28, § 2).

## C.     The Arbitration Agreements Are Enforceable.

Plaintiffs made valid agreements to arbitrate with Family Dollar.

### 1.     The Arbitration Agreements Are Enforceable Contracts Under Ordinary Contract Formation Principles.

When determining whether a valid contract to arbitrate exists, courts must apply ordinary state law principles that govern contract formation.  *See, e.g.*, *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 55-59 (2015) (Breyer, J.) (reversing California Court of Appeal for not applying ordinary contract principles to an arbitration agreement).  Arbitration agreements are presumed to be valid; the party seeking to avoid arbitration bears the burden of demonstrating otherwise.  *See, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Ambler v. BT Ams. Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013).

Under California law, a contract requires (1) the parties' consent, and (2) consideration.  *See* Cal. Civ. Code § 1550.  As numerous courts in California have held in enforcing the same terms as reflected in the Arbitration Agreements, each of these prerequisites are met here.[6]

*First*, Family Dollar and Plaintiffs each consented to be bound by the Arbitration Agreements.  "The manifestation of mutual consent is generally achieved through the process of offer and acceptance[,] . . . [and] is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed

---

[6] *See, e.g.*, Request for Judicial Notice ("RJN"), Exs. A through H.  Specifically, in *Snipes v. Dollar Tree Distribution, Inc.*, USDC Eastern District of California Case No. 2:15-cv-00878-MCE-DB; *Magpali v. Dollar Tree Stores, Inc.*, Kern County Superior Court Case No. BCV-21-101-346 BCB; and *Robertson v. Family Dollar, Inc.*, Kern County Superior Court Case No. BCV-20-101591, the courts enforced arbitration agreements that generally parallel (or—in the case of *Robertson* are) the 2016 Arbitration Agreement.  Similarly, in *Clark v. Dollar Tree Stores, Inc.*, San Bernardino Superior Court Case No. CIVSB2131354, the court enforced an arbitration agreement with Dollar Tree that parallels the 2020 Arbitration Agreement.  *See* RJN, Exs. A to H.

intentions or understandings." *Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (2014) (internal citations and quotation marks omitted). Under governing law, "a party's acceptance of an agreement to arbitrate may be express . . . or implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." *Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 420 (2000) (internal citations omitted).

As to Plaintiffs:

- Menjivar and Perfecto signed the 2016 Arbitration Agreement by entering the last four numbers of their social security numbers. Votta Decl., ¶¶ 14-16, 21, Exs. A, F.

- After being repeatedly notified of its pending applicability, Lee, Simmons, and Stallings chose to continue to work for Family Dollar after the effective date of the 2020 Arbitration Agreement, implicitly agreeing to it.[7]  Broel Decl. ¶ 26; Derry Decl. ¶¶ 2-5, Exs. A, B (DiBianca Aff., ¶¶ 4-5, Ex. B).

For its part, Family Dollar demonstrated its consent to be bound by the Arbitration Agreements by formally presenting them and by declaring Family Dollar's intent to be bound thereby. *See, e.g.*, *Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 397-99 (2015) (binding employer where arbitration agreement was on company letterhead and contained language agreeing to mandatory final and binding arbitration); *and* Broel Decl., ¶ 13, Ex. E at 32; Votta Decl., ¶ 16, Ex. F; Derry Decl. ¶¶ 2-5, Ex. A (DiBianca Aff., ¶ 2, Ex. A).

*Second*, ample legal consideration existed to support Plaintiffs' promise to arbitrate. "[T]he parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other." *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996); *Circuit City Stores,*

---

[7] A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail. Cal. Evid. Code § 641.

DEF.'S MEMO. POINTS & AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION
AND STAY ALL PROCEEDINGS

*Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's promise to be bound by the arbitration process supplies consideration).  Here, Family Dollar was bound to arbitrate any claims it might have had against Plaintiffs—just as Plaintiffs so agreed. Broel Decl., ¶ 13, Ex. E at 32; Votta Decl., ¶ 16, Ex. F; Derry Decl. ¶¶ 2-5, Ex. A (DiBianca Aff., ¶ 2, Ex. A).

Because all of the requirements for a valid contract under California law have been met, Family Dollar and Plaintiffs are bound by their Arbitration Agreements.

### 2.    The Arbitration Agreements Are Not Unconscionable.

Plaintiffs cannot credibly claim that the Arbitration Agreements are unconscionable.

### a.    California's Unconscionability Test.

Unconscionability is an affirmative defense to the enforcement of a contract. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981).  "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012); *see also Rosenthal*, 14 Cal. 4th at 413 ("If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense.").

Unconscionability has both a substantive and a procedural element.  An agreement to arbitrate is unenforceable only where both substantive and procedural unconscionability exist; it is not enough that one may exist without the other.  *See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000) (both forms of unconscionability must be present to defeat contract formation); *Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1243-44 (2016) (both forms of unconscionability must be present, and if one form is low, the other must be high, or the agreement will be enforced).

"'With a concept as nebulous as 'unconscionability,' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that

the parties have agreed to merely because the court believes the terms are unreasonable.'" *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001) (quoting *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996)).   As the California Supreme Court reiterated, "The unconscionability inquiry is not a license for courts to impose their renditions of an ideal arbitral scheme." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1148 (2013).   "[T]here are many ways to structure [an] arbitration [program]," the Court explained, and the program need not "adopt any particular procedure or assume any particular form." *Id.* at 1163, 1170-71.   "[C]ourts may not decline to enforce an arbitration agreement simply on the ground that it appears to be a bad bargain or that one party could have done better." *Id.* at 1148; *accord Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015) ("A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain."); *Baltazar*, 62 Cal. 4th at 1245 (same).

The Arbitration Agreements are not procedurally or substantively unconscionable, and certainly not both.

### b.    The Arbitration Agreements Are Not Substantively Unconscionable.

*Armendariz* held that, for an employment arbitration agreement to be enforceable, it must meet certain "minimum requirements" to ensure that substantive rights afforded by statute are not waived.   Specifically, an arbitration agreement is enforceable if it provides for:  (i) a neutral arbitrator; (ii) a written decision subject to limited judicial review; (iii) payment by the employer of all costs unique to arbitration; (iv) adequate discovery; and (v) recovery of all statutory remedies. *See Armendariz*, 24 Cal. 4th at 90-91, 103-13.   The Arbitration Agreements meet all of those requirements.

*First*, each of the Arbitration Agreements provide for a neutral arbitrator selected by the parties as provided therein. *See, e.g.,* Broel Decl., ¶ 13, Ex. E at § 8;

Votta Decl., ¶ 16, Ex. F at 6; Derry Decl. ¶¶ 2-5, Ex. A at 17 (DiBianca Aff., ¶ 2, Ex. A at p. 11 or 28, § 8); Derry Decl., ¶ 6, Ex. C (JAMS R. 7).

*Second*, the Arbitration Agreements require for the decision to be in writing. *See, e.g.,* Broel Decl., ¶ 13, Ex. E at § 11(c); Votta Decl., ¶ 16, Ex. F at 7; Derry Decl. ¶¶ 2-5, Ex. A at 17 (DiBianca Aff., ¶ 2, Ex. A at p. 11 of 28, § 8); Derry Decl., ¶ 6, Ex. C (JAMS R. 24(h)).

*Third*, the Arbitration Agreements require Family Dollar to pay any cost unique to Arbitration. *See, e.g.,* Broel Decl., ¶ 13, Ex. E at § 10; Votta Decl., ¶ 16, Ex. F at 7; Derry Decl. ¶¶ 2-5, Ex. A at 18 (DiBianca Aff., ¶ 2, Ex. A at p. 12 of 28, § 14). That tracks *Armendariz*, which states that the employee can be asked to bear an "expense that the employee would . . . be required to bear if he or she were . . . to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11.

*Fourth*, the Arbitration Agreements also provide for adequate discovery. In *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975 (2010), recognizing the intent of a streamlined hearing process in arbitration, the Court of Appeal held adequate the following discovery:

> Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. . . . Each party also shall have the right to make requests for production of documents to any party. . . . Additional discovery may be had where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of need.

*Id.* at 978, 982. The court held that this provision was consistent with *Armendariz* because "the agreement gives the arbitrator the broad discretion . . . to order the discovery needed to sufficiently litigate the parties' claims." *Id.* at 984. Here, the Arbitration Agreements replicate the discovery deemed adequate in *Dotson*. *See, e.g.,* Broel Decl., ¶ 13, Ex. E at § 9; Votta Decl., ¶ 16, Ex. F at 7; Derry Decl. ¶¶ 2-5, Ex. A at 18 (DiBianca Aff., ¶ 2, Ex. A at p. 12 of 28, § 12); Derry Decl., ¶ 6, Ex. C (JAMS R. 17 (a)-(b)).

*Fifth*, the Arbitration Agreements permit Plaintiffs to recover all statutory remedies. *See, e.g.,* Broel Decl., ¶ 13, Ex. E at § 11(a); Votta Decl., ¶ 16, Ex. F at 7; Derry Decl. ¶¶ 2-5, Ex. A at 17 (DiBianca Aff., ¶ 2, Ex. A at p. 11 of 28, § 8).  Since "nothing in the language of the present agreement limits remedies," "no limitation should be implied." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1075 n.1 (2003).

Thus, there is no indicium of substantive unconscionability.[8]

### c.    The Arbitration Agreements Are Not Procedurally Unconscionable.

"Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999) (internal quotation marks and citation omitted).  In *Baltazar*, the California Supreme Court analyzed whether the presentment of an arbitration agreement was procedurally unconscionable.  There, the employer gave the plaintiff an arbitration agreement in a job interview and told her, "sign it or no job." *Baltazar*, 62 Cal. 4th. at 1241.  In enforcing the agreement, the unanimous Supreme Court explained that although the agreement was a contract of adhesion, there was "no element of surprise" or "oppression or sharp practices" on the part of the employer.  *Id.* at 1245.

Here, as in *Baltazar*, there was no surprise or oppression for any of the Plaintiffs.  "'Surprise involves the extent to which the terms of the bargain are hidden

---

[8] Should Plaintiffs Lee, Simmons, and Stallings argue—as they proffered during the meet and confer process—that the 2020 Arbitration Agreements to which they agreed are, nonetheless, prohibited under California Labor Code section 432.6, such an argument should be rejected for two reasons. *First*, Labor Code section 432.6 may well be preempted and unenforceable across the board. *See Chamber of Com. Of U.S. v. Becerra*, 438 F. Supp. 3d 1078, 1085 (2020) (finding statute preempted); *see also* RJN, Ex. I (Order, No. 20-15291 (9th Cir. Feb. 14, 2022) (deferring en banc consideration of panel decision that reversed a district court ruling on preemption of Labor Code § 432.6, pending the Supreme Court's resolution of *Viking River Cruises, Inc.*)).  *Second*, even if the 2020 Arbitration Agreement were unenforceable (it is not), Lee, Simmons, and Stallings each agreed to earlier agreements that would remain applicable. *See* FN 3 *supra*.

in a 'prolix printed form' drafted by a party in a superior bargaining position.'"
*Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1469 (2009) (citation omitted).
For example, in *Oto, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019), *cert. denied* 141 S. Ct. 85
(2020), the California Supreme Court found an arbitration agreement procedurally
unconscionable where the agreement was one-page long with extremely small font;
there was one single dense paragraph covering arbitration that was 51 lines; the
agreement was presented by a low-level employee who waited for the plaintiff to
sign; and any time the plaintiff spent reviewing the agreement would reduce the
plaintiff's pay. *Id*. at 127-29. In contrast, in *Roman*, the court found that any
procedural unconscionability was limited because the arbitration provision "was not
buried in a lengthy employment agreement[; r]ather, it was contained on the last page
of a seven-page employment application, underneath [an appropriate] heading."
*Roman*, 172 Cal. App. 4th at 1471.

Here, the Arbitration Agreements were even more transparent than the
agreement enforced in *Roman* and nothing like the agreement (or circumstances of
presentation) in *Oto*. Other documents flagged and informed Plaintiffs of the
Arbitration Agreements. The Arbitration Agreements were all titled "**MUTUAL
AGREEMENT TO ARBITRATE CLAIMS.**" *See*, *e.g.*, Broel Decl. ¶ 13, Ex. E;
Votta Decl., ¶ 16, Ex. F; Derry Decl. ¶¶ 2-5, Ex. A (DiBianca Aff., ¶ 2, Ex. A). The
Arbitration Agreements explain arbitration over the course of multiple pages. *Id.*
The Arbitration Agreements contained separated topic headings for each section. *Id.*
The Arbitration Agreements refer Plaintiffs to other sources for further information.
*Id.* Finally, the Arbitration Agreements all clearly indicate in all capital letters that
the parties are opting out of their rights to a jury trial:

| 2013 | "I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE |
|------|---|

| | |
|---|---|
| | DISPUTES COVERED BY THIS AGREEMENT." *See, e.g.*, Broel Decl. ¶ 13, Ex. E at § 16 (bold removed). |
| **2016** | "I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT." *See, e.g.*, Votta Decl., ¶ 16, Ex. F at p. 9 (bold removed). |
| **2020** | "THE PARTIES UNDERSTAND THAT (EXCEPT AS PROVIDED ABOVE) THEY ARE GIVING UP THE RIGHT TO A TRIAL IN COURT WITH A JUDGE OR JURY AS TO CLAIMS COVERED BY THIS AGREEMENT."  Derry Decl. ¶¶ 2-5, Ex. A at 20 (DiBianca Aff., ¶ 2, Ex. A at p. 14 of 28, § 22). |

There is simply no reasonable argument that the nature or importance of the Arbitration Agreements was concealed.  *See, e.g.*, *Pinnacle*, 55 Cal. 4th at 247 and n.12 (rejecting contention of unconscionability; "[T]he trial court found no evidence of surprise," and "[w]e agree.  The record reflects that the arbitration provisions . . . appear in a separate article under a bold, capitalized . . . caption").  The arbitration promises and their impact were conspicuous.  There was no oppression or surprise.

### d.  The Arbitration Agreements Therefore Are Enforceable.

"Both procedural unconscionability and substantive unconscionability must be shown" before an agreement may be held unenforceable.  *Pinnacle*, 55 Cal. 4th at 247; *accord Baltazar*, 62 Cal. 4th at 1243-44 (same).  If this Court concludes, as it should, that at least one form of unconscionability is wholly absent, the Arbitration Agreements are enforceable without more.  *Circuit City*, 294 F.3d at 1108 n.2 (applying California law: "In light of our holding that the [arbitration agreement] is not procedurally unconscionable, we do not consider whether the agreement is substantively unconscionable.") (citation omitted); *Crippen v. Cent. Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1167 (2004) (enforcing arbitration agreement:

"[W]e hold that the record in this case discloses no procedural unconscionability.  In light of our conclusion, we need not address whether there was a showing of substantive unconscionability or whether the court should have severed the challenged provisions."); *D.C. v. Harvard-Westlake Sch.*, 176 Cal. App. 4th 836, 869 (2009) (enforcing arbitration agreement: "Because the record discloses no procedural unconscionability to any degree, plaintiffs' unconscionability argument fails[.]").

Alternatively, the Arbitration Agreements should be enforced even if (erroneously, in Family Dollar's view) this Court found both forms of unconscionability to be present.  A reviewing court's task "is not only to determine *whether* . . . unconscionability exists, but more importantly, *to what degree* it may exist." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005) (emphasis in original).  Where there is minimal procedural unconscionability, the party opposing arbitration must show a high level of substantive unconscionability (or vice versa).  *See, e.g.*, *Armendariz*, 24 Cal. 4th at 114 ("[T]he more substantively oppressive the contract term[s], the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."); *Dotson*, 181 Cal. App. 4th at 982 ("Because the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high."); *Roman*, 172 Cal. App. 4th at 1469 (same).

For example, in *Marin Storage*, 89 Cal. App. 4th at 1056, the court found that "procedural unconscionability, although extant, was not great" in light of all the circumstances.  "In light of the low level of procedural unfairness, we conclude that a greater degree of substantive unfairness than has been shown here was required before the contract could [be invalidated]." *Id.* (alteration added); *see also Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013) ("When, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'") (citation

omitted); *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 586 (2007) (in light of the minimal degree of procedural unconscionability, plaintiff was required to "make a strong showing of substantive unconscionability").

The Arbitration Agreements are not unconscionable at all, but even assuming *arguendo* they were, the level of unconscionability at worst is low.  The Arbitration Agreements should be enforced under California's sliding scale test.

## IV.   THE PAGA CLAIM SHOULD BE STAYED

Plaintiffs no doubt will contend that the PAGA cause of action is not arbitrable under the rule of *Iskanian* and *Sakkab*.  *See Iskanian v. CLS Transp., L.A., LLC*, 59 Cal. 4th 348 (2014); *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015).  However, Plaintiff Lee's PAGA cause of action should be stayed for at least two different reasons.

*First*, the FAA directs courts to stay all proceedings pending completion of the arbitration.  *See* 9 U.S.C. § 3 (courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").  Given that Lee's PAGA claim is derivative of other claims that are subject to arbitration, the Court should stay the PAGA representative claim pending the outcome of her individual arbitration.  Doing so would serve the interests of justice, avoid prejudice to the Parties, and conserve party and court resources by eliminating the cost of dual proceedings and avoiding the possibility of inconsistent outcomes.  Once Family Dollar prevails at arbitration on all of Lee's claims, she would not be an "aggrieved employee" and, therefore, has no standing to pursue a PAGA claim.  *See* Cal. Lab. Code § 2699(c) ("'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.").

Given this, courts faced with arbitrable claims combined with nonarbitrable PAGA claims routinely stay the PAGA action while the arbitration proceeds.  *See, e.g.*, *Alvarez v. AutoZone, Inc.*, No. EDCV 14-02471-VAP (SPx), 2015 WL

13427751, at *2-3 (C.D. Cal. July 8, 2015) (granting motion to stay plaintiff's PAGA claims pending arbitration of individual claims; "The Court finds that it would be economical for the Court, and both parties, if the PAGA claims were stayed.  This course of action would circumvent simultaneous and duplicative litigation of the same set of issues, facts, and questions of law."); *Taft v. Henley Enters., Inc.*, No. SACV 15-1658-JLS (JCGx), 2016 WL 9448485, at *10 (C.D. Cal. Mar. 2, 2016) (granting motion to compel arbitration of plaintiff's individual non-PAGA claims and staying all proceedings during arbitration, including plaintiff's PAGA claim); *Jenkins v. Sterling Jewelers, Inc.*, No. 17cv1999-MMA (BGS), 2018 WL 922386, at *8 (S.D. Cal. Feb. 16, 2018) (granting motion to compel arbitration of non-PAGA claims and staying the PAGA claims pending the outcome of the arbitration; "'Plaintiff's PAGA claims are derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision.'") (citations omitted); *Narez v. Macy's W. Stores, Inc.*, No.16-cv-00936-LHK, 2016 U.S. Dist. LEXIS 99792, at *13 (N.D. Cal. July 28, 2016) ("Plaintiff's representative PAGA claim . . . will be severed from Plaintiff's individual claims . . . and remain before this Court [subject to a stay, pending resolution of arbitration proceedings]."); *Shepardson v. Adecco USA, Inc.*, No. 15-cv-05102-EMC, 2016 U.S. Dist. LEXIS 46754, at *19-20 (N.D. Cal. Apr. 5, 2016) ("Plaintiff's PAGA claims are derivative in nature of her substantive claims that will proceed to arbitration, and the outcome of the nonarbitrable PAGA claims will depend upon the arbitrator's decision.  . . .  The Court finds such a stay appropriate here.") (citations omitted); *Jacobson v. Snap-on Tools Co.*, No. 15-cv-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (same); *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 946-47 (N.D. Cal. 2015) (staying representative PAGA claim, pending the outcome of arbitration).

*Second*, whether PAGA actions are protected from FAA enforcement is not settled.  As the Court is certainly aware, the U.S. Supreme Court is presently

considering the impact of the FAA on PAGA actions in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 734 (2021).  The precise question presented in *Viking River Cruises* is "whether the Federal Arbitration Act requires enforcement of a bilateral arbitration agreement providing that an employee cannot raise representative claims, including under PAGA."  RJN, Ex. J.  While under the current state of the law—as reflected by *Iskanian*—a PAGA claim is not impacted by an arbitration agreement, that could change pending *Viking River Cruises*.  Under the 2020 Arbitration Agreement, Lee agreed to proceed with her claims on an individual basis only.  Thus, under general principles of *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010) (holding a party may not be compelled to submit to class arbitration, unless the parties clearly evidenced an agreement to do so), she should be prohibited from proceeding on her representative PAGA claim due to their bilateral agreements to pursue claims on an individual basis only.[9]  For this additional reason, the PAGA claim should be stayed.

## V.    CONCLUSION

Plaintiffs promised to arbitrate any disputes they might have with Family Dollar on an individual basis (and vice versa).  Accordingly, Family Dollar respectfully requests that this Court order Plaintiffs to submit their first through ninth

///

///

///

---

[9] Furthermore, to the extent necessary, under the 2013 Arbitration Agreement, Lee expressly waived the right for any dispute to be brought "as a representative action."  Broel Decl., ¶ 9, Ex. B at 17, § 6.

claims for relief to individual arbitration, dismiss the class claims, and stay the tenth claim for relief for derivative civil penalties under PAGA pending completion of Lee's individual arbitration or until *Viking River Cruises* directs a different result.

Dated:  May 5, 2022

PAUL HASTINGS LLP
ELENA R. BACA
RYAN D. DERRY
JENNIFER MILAZZO

By: _____
            Ryan D. Derry

Attorneys for Defendant
FAMILY DOLLAR, INC.

DEF.'S MEMO. POINTS & AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION
AND STAY ALL PROCEEDINGS