PAUL HASTINGS LLP
ELENA R. BACA (SB# 160564)
elenabaca@paulhastings.com
JENNIFER L. MILAZZO (SB# 318356)
jennifermilazzo@paulhastings.com
515 South Flower Street, 25th Floor
Los Angeles, CA  90071
Telephone:   (213) 683-6000
Facsimile:    (213) 627-0705

PAUL HASTINGS LLP
RYAN D. DERRY (SB# 244337)
ryanderry@paulhastings.com
101 California Street, 48th Floor
San Francisco, CA  94111
Telephone:   (415) 856-7000
Facsimile:    (415) 856-7100

Attorneys for Defendant
FAMILY DOLLAR, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPHINE PERFECTO, MARK BOULDIN, YVETTE SIMMONS, ASHLEY LEE, DANIEL MENJIVAR, CRYSTAL STALLINGS, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FAMILY DOLLAR, INC., a North Carolina corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:22-CV-01410-GW-JC<br><br>**DECLARATION OF RYAN D. DERRY IN SUPPORT OF DEFENDANT FAMILY DOLLAR, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**<br><br>Date:        June 2, 2022<br>Time:        9:00 a.m.<br>Courtroom:  9D<br>Judge:       George H. Wu<br><br>Complaint Filed: December 29, 2021 |

## **DECLARATION OF RYAN D. DERRY**

I, Ryan D. Derry, declare and state as follows:

1.      I am an attorney admitted to practice law before all the courts of the State of California.  I am a Partner at the law firm of Paul Hastings LLP, counsel of record for Family Dollar, Inc. ("Family Dollar") in the above-captioned action.  I have personal knowledge of the facts stated herein or know of such facts by my review of the files maintained by the firm in the ordinary course of its business at or near the time the acts, conditions, or events recorded herein.  If called as a witness to testify, I could and would competently testify to them.

2.      Attached as **Exhibit A** is a true and correct copy of an affidavit by Ronald DiBianca, Mail Production Manager at Toppan Merrill, executed December 29, 2020.

3.      Mr. DiBianca attached a document as Exhibit B to his affidavit reflecting the 208,935 names and addresses of people to whom Toppan Merrill mailed Family Dollar's arbitration mailer.  Crystal Stallings' name appears on page 2802 of 3603 of the list of names and addresses.  Yvette Simmons' name appears on page 2855 of 3603 of the list of names and addresses.  Ashley Lee's name appears on page 2989 of 3603 of the list of names and addresses.  In lieu of submitting the entire 3603-page document, a true and correct copy of pages 2802, 2855, and 2989 are attached as **Exhibit B**.

4.      As to Exhibit B, on May 6, 2022, I redacted all names and entries on pages 2802, 2855, and 2989, except for the entries that related to Ms. Lee, Ms. Simmons, and Ms. Stallings on account of privacy considerations.  I have redacted the home addresses of Ms. Lee, Ms. Simmons, and Ms. Stallings in black for purposes of filing Exhibit B publicly.  A version of Exhibit B without the home addresses of Ms. Lee, Ms. Simmons, and Ms. Stallings will be filed conditionally

under seal consistent with the Local Rules.  The entire affidavit with the complete copy of Exhibit B can be provided to the Court for *in camera* review, if necessary.

5.    Mr. DiBianca attached a document as Exhibit C to his affidavit reflecting the names and addresses of mailers that were returned back to Toppan Merrill as undeliverable.  On May 5, 2022, I reviewed the entirety of the document attached to Mr. DiBianca's affidavit for the names and addresses of Ashley Lee, Crystal Stallings, and Yvette Simmons.  Ms. Lee's, Ms. Stallings's, and Ms. Simmons's names and addresses do not appear on this list.  Accordingly, I have not included that list from the filing.  Again, the entire affidavit with the complete copy of Exhibit C can be provided to the Court for *in camera* review, if necessary.

6.    Attached hereto as **Exhibit C** is a true and correct copy of the JAMS Employment Arbitration Rules & Procedures as referenced in Family Dollar's 2016 Arbitration Agreement, currently available online at https://www.jamsadr.com/rules-employment-arbitration/english, last accessed on May 4, 2022.

7.    Between March 10, 2020 and April 15, 2020, I engaged in various telephonic and email meet and confer communications with counsel for Plaintiffs Josephine Perfecto, Mark Bouldin, Yvette Simmons, Ashley Lee, Daniel Menjivar, Crystal Stallings' (collectively, "Plaintiffs"), regarding the existence and applicability of the Mutual Agreement to Arbitrate Claims between plaintiffs and Family Dollar.

a)    On March 10, 2022, I contacted Plaintiffs' counsel, advised him of the existence of the Arbitration Agreements, and informed him that Family Dollar would move to compel arbitration if Plaintiffs did not agree to arbitrate.

b)    On March 24, 2022, I sent Plaintiffs' counsel copies of the Arbitration Agreements for all six named Plaintiffs.

c)    On April 6, 2022, Plaintiffs' counsel and I discussed the Arbitration Agreements.

d)      On April 11, 2022, Family Dollar's counsel sent Plaintiffs' counsel a letter explaining Family Dollar's position that the putative class claims were filed in the wrong forum.

e)      Plaintiffs have refused to stipulate to arbitration, requiring this motion to compel arbitration.

8.    I have also met and conferred with Plaintiffs' counsel regarding the dismissal of certain claims. On May 5, 2022, before the filing of this Motion, I signed and returned a stipulation to Plaintiffs' counsel to dismiss all claims asserted on behalf of Mark Bouldin and the claim under the California Private Attorney General ("PAGA") as to Mr. Menjivar, Ms. Perfecto, Ms. Simmons, and Ms. Stallings.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed this 5th day of May 2022 at San Francisco, California

_____
Ryan D. Derry

LEGAL_US_W # 111859207.2

# EXHIBIT A

# TOPPAN

**TOPPAN MERRILL**
109 North 5th Street, Saddle Brook. NJ 07663
TEL 201-226-9220

http://www.toppanmerrill.com

---

STATE OF NEW JERSEY )
COUNTY OF BERGEN )

Ronald DiBianca deposes and says:

1. I am employed by Toppan Merrill as its Mail Production Manager.  I have personal knowledge of the facts stated herein and, if called upon to testify, I could and would testify competently to such facts.
2. Dollar Tree asked Toppan Merrill to prepare and send arbitration agreement mailers, in English and Spanish, to over 208,935 people.  A true and correct copy of the arbitration agreement mailer is attached hereto as Exhibit A.
3. A representative from Dollar Tree's legal department provided Toppan Merrill with the names and last known address of 208,935 individuals.  Toppan Merrill then conducted a National Change of Address (NCOA) search and updated the addresses for those individuals based on the most up-to-date USPS database available for the supplied names and addresses.  A true and correct copy of the updated list of names and addresses is attached hereto as Exhibit B.
4. On the 23rd day of October, 2020, in the regular course of my duties, I caused the arbitration agreement mailers to be mailed via USPS first class mail, postage prepaid, to everyone on Exhibit B.
5. During the period between October 26th and December 23rd, 2020, Toppan Merrill received back 13,643 of the arbitration agreement mailers it sent due to the addressee either no longer residing at the mailing address or refusing to accept and requesting a return of the mailer.  A true and correct copy of the list of names and addresses associated with the returned mailers is attached hereto as Exhibit C.

James C. DiBianca
NOTARY PUBLIC OF NEW JERSEY
Comm. # 50049691
My Commission Expires 11/17/2021

_____
Ronald DiBianca

Sworn to before me this
29th day Of Dec, 2020

EXHIBIT A, Page 6

**EXHIBIT A**

Toppan Merrill
649 Rahway Avenue
Union, NJ 07083

PRESORT
FIRST CLASS
U.S. POSTAGE
PAID
TOPPAN MERRILL

**DOLLAR TREE** | **FAMILY DOLLAR**

## 2020 ARBITRATION DOCUMENTS

## Documentos de arbitraje 2020

For more information, visit the Company's arbitration website at
www.dtarbitration.com.

MEMORANDUM

| | |
|---|---|
| To: | Dollar Tree and Family Dollar Associates |
| From: | Dollar Tree and Family Dollar ("Company") |
| Date: | October 23, 2020 |
| Re: | Important Announcement about the Company's Arbitration Program |

We are updating and revising certain provisions in your current Arbitration Agreement by replacing it with a new Arbitration Agreement. The new Arbitration Agreement applies to claims filed in court or arbitration demands served after October 23, 2020. Your current Arbitration Agreement will continue to apply to claims filed in court or arbitration demands served on or before that date.

The new Arbitration Agreement is enclosed along with Frequently Asked Questions. Please read these documents carefully.

**If you are employed by the Company on December 10, 2020, you will be bound by the new Arbitration Agreement, without any further action on your part.** There is no need to sign the new Agreement. If you cease working for the Company before December 10, 2020, you will not be subject to the new Arbitration Agreement but will continue to be bound by your current Arbitration Agreement.

The new Arbitration Agreement differs from your current Arbitration Agreement in several ways. Please read the new Arbitration Agreement and Frequently Asked Questions for a more complete description of the differences, but examples are:

- Associates and the Company are no longer directed to use a specifically designated arbitration provider, such as JAMS. Instead, the parties will have the flexibility to use any mutually agreed upon arbitration provider. If the parties cannot agree, then either party may ask the court to appoint an arbitrator.
- Claims that qualify for small claims court must be resolved in small claims court -- and not arbitration -- unless both the Company and the Associate agree to use arbitration. We believe that qualifying small claims are generally more quickly and efficiently resolved in courts that are designed to adjudicate claims of that type.

Key aspects of the Company's arbitration program will continue under the new Arbitration Agreement. For example:

- Both you and the Company still agree to resolve most disputes through binding arbitration, rather than in court, and waive the right to a jury trial for claims covered by the Arbitration Agreement.
- Both you and the Company still agree that claims subject to the Arbitration Agreement can only proceed on an individual basis. You cannot file or participate in a class or collective action in arbitration or in court.

If you still have questions after you have read the attached materials, please go to the Company's arbitration website, www.dtarbitration.com, send an email to dtarbitration@dollartree.com, or consult your own legal counsel.

As always, thank you for your hard work on behalf of the Company.

## DOLLAR TREE/FAMILY DOLLAR ARBITRATION PROGRAM:
## FREQUENTLY ASKED QUESTIONS

The purpose of these Frequently Asked Questions (FAQs) is to summarize certain terms of the new Arbitration Agreement between you and Dollar Tree/Family Dollar.  You must read the Arbitration Agreement itself to understand how it works.  If you have questions about the new Arbitration Agreement, ask a lawyer.  Dollar Tree/Family Dollar (the "Company")[1] is unable to provide you with legal advice. IN THE EVENT OF CONFLICT BETWEEN THE TERMS OF THIS FAQ AND THE ARBITRATION AGREEMENT, THE ARBITRATION AGREEMENT CONTROLS.

**Questions about the new Arbitration Agreement?**

- **Why is there a new Arbitration Agreement?**

  The Company's arbitration program has been in place for more than 5 years.  There are some changes that the Company wanted to make to the program, so the Company revised the Arbitration Agreement.

- **When are claims subject to the new Arbitration Agreement?**

  The new Arbitration Agreement applies to claims filed in court or arbitration demands served after October 23, 2020.  Your current Arbitration Agreement will continue to apply to claims filed in court, or demands served, on or before that date.

- **Who is bound by the new Arbitration Agreement?**

  If you are employed by the Company on December 10, 2020, you will be bound by the new Arbitration Agreement, without any further action on your part.  There is no need to sign the new Agreement. If you cease working for the Company before December 10, 2020, you will not be subject to the new Arbitration Agreement but will continue to be bound by your current Arbitration Agreement.  In addition, you will not be bound by the new or any Arbitration Agreement if you have been continuously employed by Dollar Tree since before October 6, 2014 and you then timely opted out of Dollar Tree's original Arbitration Agreement.

- **What are examples of important changes made in the new Arbitration Agreement?**

  Please read the new Arbitration Agreement in full so that you understand it.  The statements made in this FAQ document are just summaries of the Arbitration Agreement.  That said, examples of important changes made by the new Arbitration Agreement are:

  o Associates and the Company are no longer directed to use a specifically designated arbitration provider, such as JAMS.  Instead, the parties will have the flexibility to use any mutually agreed upon arbitration provider. If the parties cannot agree, then either party may ask the court to appoint an arbitrator.

---

[1] The "Company" or "Dollar Tree" means Dollar Tree, Inc. and any of its direct or indirect subsidiaries organized under the laws of the United States or a state or jurisdiction of the United States that employs Associate, including but not limited to Family Dollar Stores, Inc., Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Management, LLC, or Greenbrier International, Inc.

- ○ Claims that qualify for small claims court must be resolved in small claims court -- and not in arbitration -- unless both the Company and the Associate agree to use arbitration. We believe that qualifying small claims are more quickly and efficiently resolved in courts specifically designed to handle claims of that type.

**General Questions about the Arbitration Process**

- **What is arbitration?**

- Arbitration is a dispute resolution process in which people agree to have a neutral arbitrator resolve a dispute between them instead of going to court. Arbitration is less formal than court, and it tends to be more efficient and less expensive.

- **How is arbitration different from mediation?**

  Mediation is a voluntary non-binding dispute resolution process, whereas arbitration is binding. Parties to the Company's Arbitration Agreement may decide to try to resolve their dispute through mediation before starting, or during, the arbitration process. Neither party is required to agree to mediation. Neither party is required to accept the mediator's recommendation of how to resolve the dispute. If the parties do not agree to mediation, or if mediation is not successful, then the dispute will be arbitrated.

- **Is Arbitration the only way for me to resolve disputes with the Company?**

  No. All Associates are encouraged to use the Company's Open Door Policy and to try to resolve concerns by communicating them to your Manager or another member of your management team. You may also contact Human Resources or call the Associate Connection at 1-800-876-8077. The parties' Arbitration Agreement is another available process for resolving disputes.

- **Can we choose anyone to be the arbitrator?**

  You and the Company can jointly select a neutral arbitrator. The arbitrator must be either an attorney with experience in the subject matter of the dispute and licensed to practice law where the arbitration is conducted or a retired federal or state court judge who presided in the jurisdiction where the arbitration is conducted. If the Parties cannot agree, either Party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted to appoint a neutral Arbitrator.

- **Who pays for arbitration?**

  It depends upon who initiates the claim. If the Company initiates the claim, it will pay all costs of the arbitration. If you initiate the claim, you will contribute the lesser of the filing fee required by the arbitration provider or the filing fee to initiate a claim in the court of general jurisdiction in the state where you sought employment (if you were an applicant only) or where you are or were last employed by the Company, with the Company making up the difference. Other than the amount of the filing fee, the Company will pay for the arbitrator and the administrative costs of the arbitration.

- **Do I need a lawyer to arbitrate my claim?**

  No, you are not required to have a lawyer in arbitration. You may have a lawyer if you want.

- **If I choose to hire a lawyer, how will my lawyer be paid?**

  If you choose to use a lawyer to help you arbitrate, generally you will be responsible for paying your lawyer's fees in the first instance. There are some circumstances in which the law requires the Company to pay your legal fees if you win in the arbitration. You will have the same right to an award of attorney's fees in arbitration as you would have had in court.

- **Where will the arbitration be held?**

  The arbitration will take place in the county where you applied or you work (or last worked) for the Company, unless both parties agree to another location.

- **How will I be able to gather evidence for my case?**

  Both you and the Company have the right to conduct some discovery in arbitration consistent with the procedures set forth in the arbitration agreement.

- **How is arbitration started?**

  You or the Company may start arbitration by mailing a written "Demand for Arbitration" to the other party as soon as possible after the claim arises and by no later than the legal deadlines which would apply in court. The mailing must be sent by Certified or Registered Mail, return receipt requested. Notice of a claim against the Company must be sent to the Dollar Tree/Family Dollar Arbitration Program, c/o the Chief Legal Officer at 500 Volvo Parkway, Chesapeake, VA 23320. The notice must identify and describe the nature of the claims being made, the facts upon which the claims are based and the relief or remedy sought, including the monetary value of the amount in controversy. A Demand for Arbitration form can be found on www.dtarbitration.com.

- **If The Company wants to sue me, can it go to court?**

  In general, no. The Company is also bound by the Arbitration Agreement. The Arbitration Agreement does, however, provide certain limited circumstances that permit either you or the Company to go to court. For example, either you or the Company may pursue claims in small claims court or seek temporary equitable relief in court to aid the arbitration process.

- **What is an Offer of Judgment?**

  An offer of judgment is something a defendant may use to encourage the other party to accept its settlement offer. When a defendant makes an offer of judgment, the other party (offeree) has 14 days in which to accept the offer. Any offer not accepted within the 14 days is automatically rejected. If an offeree rejects an offer of judgment and then does not obtain a more favorable judgment, then the offeree must pay the costs incurred by the defendant after the date the offer was made.

**Questions About Which Claims Are Covered By the Arbitration Agreement**

- **What disputes are covered by the Arbitration Agreement?**

  The Arbitration Agreement requires arbitration of all disputes between you and the Company arising out of or related to your application for employment, or your employment or its termination, except as described below or in the Arbitration Agreement. Disputes subject to arbitration include disputes between you and the Company, its officers, directors, employees, or agents as well as disputes

between you and the Company's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents.

Disputes that must be arbitrated include, but are not limited to:

- o Overtime, misclassification as to exempt status, breaks, meal periods, expense reimbursement, pay for bank runs, off-the-clock work, unpaid wages or other compensation;

- o Work conditions, including seating;

- o Retaliation or discrimination;

- o Breach of contract or torts;

- o Benefit plans (with certain exceptions described below);

- o Intellectual property, trade secrets, or confidential information.

- **What kinds of disputes do <u>not</u> have to be arbitrated?**

The Arbitration Agreement does not cover certain claims related to your employment with the Company, such as:

- o A court action for temporary equitable relief in aid of arbitration, where available by law;

- o Claims for workers' compensation or unemployment compensation benefits;

- o Claims that as a matter of controlling law cannot be subject to arbitration;

- o Claims for employee benefits under any benefit plan sponsored by the Company that is either (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance;

- o Claims within the jurisdiction of a small claims court may not be arbitrated unless both the Company and you agree to do so; and

- o Claims brought before, and remedies awarded by, an administrative agency if applicable law permits the agency to adjudicate the claim notwithstanding the existence of an agreement to arbitrate.  Such administrative claims include claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, or the National Labor Relations Board.

<u>Other Questions about Arbitration</u>

- **Can I file, or participate in, a class action or collective action in arbitration?**

No.  The Arbitration Agreement provides that claims subject to the Arbitration Agreement (including claims in small claims court) can only proceed on an individual basis.  You cannot file or participate in a class or collective action in arbitration.

4

- **Does the agreement to arbitrate waive my right to a jury trial?**

  Yes.  The Agreement provides that disputes are to be resolved by a single arbitrator.  Both you and the Company are waiving the right to a court, other than small claims court, or jury trial. One of the reasons arbitration typically costs less than a jury trial is that the preparation and proceedings for a jury trial are normally more expensive and time consuming than for arbitration.

- **Can I appeal an arbitrator's decision?**

  Both you and the Company have only a very limited right to appeal an arbitrator's decision.  In most cases, the arbitrator's decision is final and cannot be appealed.  You should consult an attorney with any specific questions about your appeal rights.

- **What happens if a Court decides that the new Arbitration Agreement is unenforceable?**

  If for any reason this Agreement is held not to be enforceable, then any prior arbitration agreement between you and the Company shall remain in full force and effect.

## <u>MUTUAL AGREEMENT TO ARBITRATE CLAIMS</u>

This Mutual Agreement to Arbitrate Claims ("Agreement") is entered between the Company[1] and its applicant/associate ("Associate") (collectively, the "Parties").

The Parties recognize that disputes may arise between them.  By entering into this Agreement, the Parties mutually agree to waive their right to a trial before a judge or jury in court (except as provided below), and Associate waives any right to bring or participate in class or collective actions.  In exchange, the Parties anticipate gaining the benefits of individual arbitration as a final and binding dispute-resolution procedure.

Nothing contained in this Agreement shall be construed to prevent Associate (individually or in concert with others) or the Company from utilizing the Company's existing internal procedures for resolution of complaints.

1.      **<u>Agreement to Arbitrate:</u>**  Except as otherwise provided in this Agreement, the Parties agree to resolve by arbitration all claims or controversies arising out of or related to Associate's application for employment, offer or denial of employment, prospective employment, employment or its termination, and/or related to or arising out of acts or omissions occurring on Company's premises, at Company events or on Company travel, that the Company may have against Associate or that the Associate may have against any of the following: (a) the Company, (b) its officers, directors, employees, or agents, (c) the Company's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (d) all successors and assigns of any of them; and, where Associate asserts a claim against any Company officer, director, employee or agent ("co-defendant"), claims that any such co-defendant may have against Associate.  Each of the individuals/entities listed above may enforce this Agreement.

2.      **<u>Covered Claims:</u>**  Claims subject to arbitration include, but are not limited to, claims for: overtime, misclassification as to exempt status, breaks, meal periods, expense reimbursement, off the clock work, wages, or other compensation; work conditions, including seating; breach of contract or covenant (express or implied); torts (including without limitation defamation related to the application process or during or after employment with the Company); wrongful termination; retaliation or discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); intellectual property, confidential information, or trade secrets; all employment related laws including, but not limited to, Title VII, the Fair Labor Standards Act, the Family and Medical Leave Act, the Equal Pay Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the

---

[1] The "Company" or "Dollar Tree" means Dollar Tree, Inc. and any of its direct or indirect subsidiaries organized under the laws of the United States or a state or jurisdiction of the United States that employs Associate, including but not limited to Family Dollar Stores, Inc., Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Management, LLC, or Greenbrier International, Inc.

Worker Adjustment and Retraining Notification Act, the Employee Retirement Income Security Act of 1974 ("ERISA") (except for claims for employee benefits under any benefit plan sponsored by the Company to the extent applicable plan documents set forth a different procedure for resolution of those claims), and any other claims arising under any federal, state or local statute, ordinance, regulation, public policy or common law (except as provided below).  If Associate works in Texas or any other state where the Company does not participate in the workers' compensation system, all legal and equitable claims relating to on-the-job injuries are covered by this Agreement.

The arbitrator shall have the exclusive authority to resolve any disputes or claims regarding arbitrability or the formation, interpretation, validity, applicability, unconscionability, or enforceability of this Agreement or any provision of this Agreement except as otherwise provided herein.

3.    **Claims _Not_ Required to be Arbitrated Under This Agreement:**   This Agreement expressly does not require arbitration of:

    a.   Claims for workers' compensation or unemployment compensation benefits; however, claims for discrimination or retaliation based on seeking such benefits are subject to arbitration;

    b.   Claims that, as a matter of law (after application of Federal Arbitration Act ("FAA") preemption principles), may not be subject to pre-dispute arbitration agreements, such as certain claims under the Sarbanes-Oxley Act;

    c.   Claims within the jurisdiction of, and presented on an individual basis to, a small-claims court of the state in which Associate sought employment, is or was last employed by the Company, whichever is later;

    d.   Claims for employee benefits under any benefit plan sponsored by the Company and covered by ERISA to the extent applicable plan documents set forth a different procedure for resolution of those claims;

    e.   Claims for employee benefits under any benefit plan sponsored by the Company and funded by insurance; and

    f.   Representative actions for civil penalties filed under the California Private Attorneys General Act, which may only be maintained in a court of competent jurisdiction.

Regardless of any other terms of this Agreement, a claim may be brought before (and recovery awarded by) a federal, state or local administrative agency if applicable law permits the agency to adjudicate the claim. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission, the U.S. Department of Labor, or the National Labor Relations Board.  Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

4.      **Injunctive Relief:**  Regardless of any other terms of this Agreement, either party may seek temporary injunctive relief in aid of arbitration, where available by law, in a court of competent jurisdiction.   If at any time the Arbitrator or Arbitration Administrator fails to enforce the terms of this Agreement, either Party may seek to enjoin the arbitration proceeding in a court of competent jurisdiction, and the arbitration shall be automatically stayed pending the outcome of that proceeding.

5.      **Waiver of Class and Collective Actions:**  To the maximum extent allowable by law, Associate and the Company agree to bring any dispute on an individual basis only, and not on a class or collective basis.  Accordingly, to the maximum extent allowable by law, there will be no right or authority for any dispute to be brought, heard, or arbitrated as a class or collective action. For avoidance of doubt, an arbitrator shall not have authority to adjudicate a class or collective action.

Regardless of any other terms of this Agreement, a court of competent jurisdiction (and not an arbitrator) shall resolve any claim or controversy regarding or arising out of the Waiver of Class and Collective Actions—including, but not limited to, any claim that the Waiver of Class and Collective Actions, is inapplicable, unenforceable, unconscionable, invalid, illegal, void, or voidable.  The parties agree to delay submitting any demand to an Arbitration Administrator or Arbitrator pending resolution of any dispute relating to or arising out of the Waiver of Class and Collective Actions.

6.      **Time Limits for Initiating Arbitration:**  The Parties agree that written notice initiating arbitration (a "Demand for Arbitration") must be provided to the other Party no later than the expiration of the applicable statute of limitations. Otherwise, the claim shall be deemed waived to the same extent as would be the case in a court of law.  The initiating Party is encouraged to give written notice of any claim as soon as possible after the event in dispute so that arbitration may take place promptly.

7.      **Required Notice of All Claims:**  If initiated by Associate, the Demand for Arbitration, or any counterclaim, shall be sent by certified or registered mail, return receipt requested to the Company at the following address: Dollar Tree Arbitration Program c/o the Chief Legal Officer, 500 Volvo Parkway, Chesapeake, VA 23320.

If Associate initiates arbitration against a former officer, director, employee or agent of Company, then, in sending the Demand for Arbitration to such individual, Associate must follow procedures for serving a lawsuit in accordance with the laws of the state in which Associate's claim arose.

If initiated by the Company, the Demand for Arbitration, or any counterclaim, shall be sent by certified or registered mail, return receipt requested to Associate at the last address recorded in Associate's Company profile.

The Demand for Arbitration shall be signed by the initiating Party,  identify and describe the nature of all claims asserted, the facts upon which such claims are based, and the relief or remedy sought, including the monetary value of the amount in controversy.  Any request for injunctive relief, declaratory relief, or attorneys' fees shall not count toward the calculation of the

amount in controversy unless such injunctive or declaratory relief seeks the payment of money. A Demand for Arbitration form can be found at www.dtarbitration.com.

8.    **Arbitration Procedures:**

   a.    After the Company's receipt of a Demand for Arbitration, the Parties will discuss whether to participate in a pre-arbitration mediation, using a mutually-selected mediator.  If the Parties agree to mediate, such mediation will be held promptly.  The Parties agree that mediation is encouraged as an initial step in this dispute-resolution process, but participation in mediation is entirely voluntary.

   b.    If the Parties choose not to participate in pre-arbitration mediation or if the mediation is unsuccessful in resolving all of the Parties' claims, Associate and the Company will meet and confer to select an Arbitration Administrator (or arbitral forum) or may select an individual arbitrator and forego an Arbitration Administrator.

   c.    Unless the Parties agree otherwise, the Arbitration shall be conducted before a single arbitrator, who shall be either (1) a retired federal or state judicial officer who presided in the state where the arbitration is to be convened, or (2) an attorney whose past and/or current legal practice outside of arbitration and mediation  includes, in substantial part, employment law or the relevant subject matter of the dispute and who is licensed to practice law in the state in which the arbitration is convened (the "Arbitrator").

   d.    If the Parties cannot agree on an arbitral forum or Arbitrator, either Party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted to appoint a neutral Arbitrator.

   e.    The arbitration shall be held in accordance with this Agreement.

   f.    The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose and/or federal law as applicable to the claim(s) asserted.  The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies.

   g.    The Federal Rules of Evidence shall apply, and a link to these rules can be found at www.dtarbitration.com.

   h.    The Arbitrator shall entertain dispositive motions, including but not limited to a motion to dismiss and/or a motion for summary judgment by any Party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure, and a link to these rules can be found at www.dtarbitration.com.

   i.    Either Party upon its request shall be given leave to file a post-hearing brief.

   j.    The Arbitrator shall render an award and written opinion in the form typically rendered in labor and employment arbitrations, normally no later than thirty (30) days

from the date the arbitration hearing concludes or post-hearing briefs (if requested) are received, whichever is later.  The opinion shall include the essential factual and legal basis for the award.  Any Party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement, as well as to enforce, confirm, modify, correct, or vacate an arbitration award as provided by law.

9.   **Good Faith and Offer of Judgment:**

   a.   Good Faith:  The Parties agree that all proceedings brought under this Agreement shall be brought in good faith.  By presenting a Demand for Arbitration, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—the Party and the Party's representative agree that the requirements of Federal Rule of Civil Procedure 11 shall apply to them and that the arbitrator has the authority to and may impose sanctions to the same extent that a court may for violations of Rule 11.

   b.   Offer of Judgment:  Federal Rule of Civil Procedure 68 shall apply to any offer of judgment made in or before any arbitration proceeding brought in connection with this Agreement.

10.   **Representation:** Any Party may be represented by an attorney in arbitration.

11.   **Consolidation:** Claims made by different Associates shall not be consolidated in arbitration under any circumstance unless expressly agreed to in writing by all the Parties.

12.   **Discovery and Subpoenas:** Each Party at a minimum shall have the right to take the deposition of one individual and all expert witnesses designated by the other Party(ies).  Each Party shall also have the right to propound requests for the production of documents on the other Party(ies).  Additional discovery may be had by mutual agreement of the Parties or where the Arbitrator selected so orders pursuant to a request by a Party upon a showing that such additional discovery is necessary fairly to arbitrate the dispute, taking into account the Parties' desire to have a fast and relatively inexpensive dispute-resolution mechanism.  All Parties shall have the right to subpoena witnesses and documents to the extent allowable by law, subject to any limitations the Arbitrator imposes for good cause shown.

13.   **Place of Arbitration:** The arbitration shall take place in the county (or comparable governmental unit) in which Associate sought employment, is or was last employed by the Company, whichever is later, unless all Parties otherwise agree in writing.

14.   **Arbitration Fees and Costs:** The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator and arbitration forum; provided, however, that if Associate is the Party initiating the claim, Associate will contribute the lesser of the filing fee required by the arbitral forum  or the filing fee to initiate a claim in the court of general jurisdiction in the state in which Associate sought employment, is or was last employed by the Company, whichever is later, with the Company making up the difference.

Each Party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any Party prevails on a claim which affords the prevailing Party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

15.     **Governing Law:**  The Parties agree to the maximum extent permitted by law, the Federal Arbitration Act, 9 U.S.C. section 1, et seq., shall govern the interpretation and enforcement of this Agreement and shall govern all proceedings relating to this Agreement.  If for any reason the FAA does not apply, then the law of arbitration of the state in which Associate applied for work or worked for the Company (whichever is later), shall apply.

16.     **Interstate Commerce:** Associate agrees that the Company is engaged in transactions involving interstate commerce and that Associate's application for and/or employment is related to such interstate transactions.

17.     **Survival:** This Agreement shall survive the termination of Associate's application for employment, employment and the expiration of any benefit plan.

18.     **At Will Employment:** This Agreement does not create a promise of employment for any period of time.  Associate understands that, if employed, he or she is and will remain employed "at will" and that Associate or the Company may terminate Associate's employment at any time.

19.     **Entire Agreement:** This Agreement is the full and complete agreement relating to the formal resolution of disputes between the Parties, and supersedes any previous arbitration agreement between the Parties except as to any claims at issue in a case (asserted individually, or on a class or collective basis, whether or not a class in that case has been certified) on file in court or for which a demand for arbitration has been served on the other Party as of October 23, 2020. In such event, the arbitration agreement in force at the time of such filing or service shall apply to those claims and those claims only. However, if for any reason this Agreement is held not to be enforceable, then any prior arbitration agreement between the Parties shall remain in effect.  No Party is relying on any representations, oral or written, relating to the subject matter of this Agreement, except as specifically set forth in this Agreement.

20.     **Construction and Severability:** If any provision of this Agreement is adjudged to be void, voidable, or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement, and all other provisions shall remain in full force and effect based on the Parties' mutual intent to create a binding agreement to arbitrate their disputes.

21.     **Consideration:** The promises by the Company and by Associate to arbitrate disputes, rather than litigate them before courts or other bodies, provide consideration for each other.  In addition, the Company's consideration of the employment application of Associate, any offer of employment by the Company to Associate, any employment pursuant to that offer, and continuing employment is conditioned on and made in consideration of this Agreement.

22.    **Effective Date:**  The Effective Date of this Agreement is December 10, 2020.

ASSOCIATE ACKNOWLEDGES THAT ASSOCIATE HAS CAREFULLY READ THIS
AGREEMENT AND UNDERSTANDS ITS TERMS, THAT ALL UNDERSTANDINGS AND
AGREEMENTS BETWEEN THE PARTIES RELATING TO THE SUBJECTS COVERED IN
THE AGREEMENT ARE CONTAINED IN IT, AND THAT ASSOCIATE HAS ENTERED
INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES
OR REPRESENTATIONS BY THE COMPANY, OTHER THAN THOSE CONTAINED IN
THIS AGREEMENT ITSELF.

ASSOCIATE FURTHER ACKNOWLEDGES THAT ASSOCIATE HAS BEEN GIVEN THE
OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH ASSOCIATE'S PRIVATE
LEGAL COUNSEL AND HAS DONE SO TO THE EXTENT ASSOCIATE WISHES.

THE PARTIES UNDERSTAND THAT (EXCEPT AS PROVIDED ABOVE) THEY ARE
GIVING UP THE RIGHT TO A TRIAL IN COURT WITH A JUDGE OR JURY AS TO
CLAIMS COVERED BY THIS AGREEMENT.

DOLLAR TREE, INC.

By:  _____

     Michael A. Witynski
     President and CEO

MEMORÁNDUM

| | |
|---|---|
| Para: | los Empleados de Dollar Tree y Family Dollar |
| De: | Dollar Tree y Family Dollar (la "Compañía") |
| Fecha: | 23 de octubre de 2020 |
| Asunto: | Anuncio importante sobre el Programa de arbitraje de la compañía |

Estamos actualizando y revisando ciertas disposiciones en su Acuerdo de arbitraje actual al reemplazarlo por un Acuerdo de arbitraje nuevo. El Acuerdo de arbitraje nuevo se aplica a los reclamos presentados ante los tribunales o las demandas de arbitraje notificadas después del 23 de octubre de 2020. Su Acuerdo de arbitraje actual continuará aplicándose a los reclamos presentados ante el tribunal o las demandas de arbitraje notificadas en o antes de esa fecha.

El Acuerdo de arbitraje nuevo se adjunta junto con las Preguntas más frecuentes. Lea estos documentos con atención.

**Si la Compañía lo empleó el 10 de diciembre de 2020 estará obligado por el Acuerdo de arbitraje nuevo, sin ninguna acción adicional por su parte.** No es necesario firmar el Acuerdo nuevo. Si dejase de trabajar para la Compañía antes de 10 de diciembre de 2020, no estará sujeto al Acuerdo de arbitraje nuevo, pero seguirá estando vinculado por su Acuerdo de arbitraje actual.

El Acuerdo de arbitraje nuevo difiere de su Acuerdo de Arbitraje actual en varias formas. Lea el Acuerdo de arbitraje nuevo y las Preguntas frecuentes para una descripción más completa de las diferencias, pero ejemplos son:

- ya no se les indica a los empleados y a la Compañía que utilicen un proveedor de arbitraje designado de manera específica, como JAMS. En su lugar, las partes tendrán la flexibilidad de utilizar cualquier proveedor de arbitraje mutuamente acordado. Si las partes no pudiesen ponerse de acuerdo, cualquiera de las partes puede solicitar al tribunal que designase un árbitro;
- los reclamos que calificasen para un tribunal de reclamos menores deben resolverse ante un tribunal de reclamos menores, y no en arbitraje, a menos que tanto la Compañía como el Empleado aceptasen usar el arbitraje. Creemos que los reclamos menores que califican se resuelven, por lo general, de manera más rápida y eficiente en los tribunales que están diseñados para resolver reclamos de ese tipo.

Los aspectos clave del programa de arbitraje de la Compañía continuarán bajo el Acuerdo de arbitraje nuevo. Por ejemplo:

- tanto usted como la Compañía todavía convienen resolver la mayoría de las disputas a través de un arbitraje vinculante, en vez de un tribunal, y renuncian al derecho a un juicio por jurado para los reclamos cubiertos por el Acuerdo de arbitraje.
- Tanto usted como la Compañía todavía aceptan que los reclamos sujetos al Acuerdo de arbitraje solo pueden proceder de forma individual. No puede interponer ni participar en una demanda colectiva sometida a un arbitraje o en un tribunal.

Si todavía tiene alguna pregunta luego de leer los materiales adjuntos, visite el sitio web de arbitraje de la compañía, www.dtarbitration.com o envíe un correo electrónico a dtarbitration@dollartree.com o consulte un abogado.

Como siempre, en nombre de la Compañía, gracias por su arduo trabajo.

## PROGRAMA DE ARBITRAJE DE DOLLAR TREE/FAMILLY DOLLAR: PREGUNTAS FRECUENTES

El objetivo de estas Preguntas frecuentes es resumir algunos términos del Acuerdo de arbitraje nuevo entre usted y Dollar Tree/Family Dollar. Debe leer el Acuerdo de arbitraje para comprender cómo funciona. Si tiene alguna pregunta sobre el Acuerdo de arbitraje nuevo, consulte con un abogado. Dollar Tree/Family Dollar (la "Compañía")[1] no puede proporcionarle asesoramiento legal. EN CASO DE CONFLICTO ENTRE LOS TÉRMINOS DE ESTAS PREGUNTAS FRECUENTES Y EL ACUERDO DE ARBITRAJE, EL ACUERDO DE ARBITRAJE RIGE.

**Preguntas sobre el Acuerdo de arbitraje nuevo**

- **¿Por qué hay un Acuerdo de arbitraje nuevo?**

  El programa de arbitraje de la Compañía ha estado en vigencia por más de 5 años. Hay algunos cambios que la Compañía quería hacer en el programa, por lo que la Compañía revisó el Acuerdo de arbitraje.

- **¿Cuándo están sujetos los reclamos al Acuerdo de arbitraje nuevo?**

  El Acuerdo de arbitraje nuevo se aplica a los reclamos presentados ante los tribunales o las demandas de arbitraje notificadas después del 23 de octubre de 2020. Su Acuerdo de arbitraje actual continuará aplicándose a los reclamos presentados ante el tribunal o a las demandas notificadas en o antes de esa fecha.

- **¿Quién está obligado por el Acuerdo de arbitraje nuevo?**

  Si la Compañía lo empleó el 10 de diciembre de 2020 estará obligado por el Acuerdo de arbitraje nuevo, sin ninguna acción adicional por su parte. No es necesario firmar el Acuerdo nuevo. Si dejase de trabajar para la Compañía antes de 10 de diciembre de 2020, no estará sujeto al Acuerdo de arbitraje nuevo, pero seguirá estando vinculado por su Acuerdo de arbitraje actual. Asimismo, no estará obligado por el nuevo o ningún Acuerdo de arbitraje si Dollar Tree lo hubiese empleado desde antes del 6 de octubre de 2014 y luego se hubiese excluido de manera oportuna del Acuerdo de arbitraje original de Dollar Tree.

- **¿Cuáles son ejemplos de cambios importantes realizados en el Acuerdo de arbitraje nuevo?**

  Lea el Acuerdo de arbitraje nuevo en su totalidad para que lo entienda. Las declaraciones hechas en este documento de preguntas frecuentes son solo resúmenes del Acuerdo de arbitraje. Dicho esto, ejemplos de cambios importantes realizados por el Acuerdo de arbitraje nuevo son:

  o   ya no se les indica a los empleados y a la Compañía que utilicen un proveedor de arbitraje designado de manera específica, como JAMS. En su lugar, las partes tendrán la flexibilidad de utilizar cualquier proveedor de arbitraje mutuamente acordado. Si las partes no pudiesen

---

[1] La "Compañía" o "Dollar Tree" hace referencia a Dollar Tree, Inc. y cualquiera de sus subsidiarias directas o indirectas constituidas conforme a las leyes de los Estados Unidos de Norteamérica o un estado o jurisdicción de los Estados Unidos de Norteamérica que contratase al Empleado, lo que incluye, entre otros, a Family Dollar Stores, Inc., Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Management, LLC o Greenbrier International, Inc.

ponerse de acuerdo, cualquiera de las partes puede solicitar al tribunal que designase un árbitro;

o   los reclamos que calificasen para un tribunal de reclamos menores deben resolverse ante un tribunal de reclamos menores, y no en arbitraje, a menos que tanto la Compañía como el Empleado aceptasen usar el arbitraje. Creemos que los reclamos menores que califican se resuelven de manera más rápida y eficiente en los tribunales que están diseñados de manera específica para tratar reclamos de ese tipo.

**Preguntas generales sobre el proceso de arbitraje**

- **¿Qué es un arbitraje?**

- Un arbitraje es un proceso de resolución de controversias en el que las personas acuerdan que un árbitro neutral resuelva la controversia entre ellos en lugar de recurrir a un tribunal. El arbitraje es menos formal que el tribunal y tiende a ser más eficiente y menos costoso.

- **¿En qué se diferencia el arbitraje de la mediación?**

  La mediación es un proceso voluntario de resolución de controversias no vinculante, mientras que el arbitraje es vinculante. Las Partes en el Acuerdo de arbitraje de la Compañía pueden decidir tratar de resolver su disputa a través de la mediación antes de iniciar, o durante, el proceso de arbitraje. No se le exige a ninguna parte aceptar la mediación. No se le exige a ninguna parte aceptar la recomendación del mediador respecto a cómo resolver la controversia. Si las partes no aceptasen la mediación o esta no fuese exitosa, entonces, la controversia se someterá a arbitraje.

- **¿Es el Arbitraje la única manera de resolver disputas con la Compañía?**

  No, se alienta a todos los Empleados a usar la Política de puertas abiertas de la Compañía y a tratar de resolver sus inquietudes y comunicarlas a su Gerente o a otro miembro de su equipo de administración. También puede comunicarse con Recursos Humanos o comunicarse con la Conexión del empleado al 1-800-876-8077. El Acuerdo de arbitraje de las partes es otro proceso disponible para resolver las disputas.

- **¿Podemos elegir el árbitro?**

  Usted y la Compañía pueden elegir un árbitro neutral en conjunto. El árbitro debe ser o bien un abogado con experiencia en el objeto de la controversia y autorizado para ejercer el derecho en el lugar que se realiza el proceso de arbitraje o un juez jubilado de algún tribunal federal o estatal que hubiese presidido en la jurisdicción donde se realiza el arbitraje. Si las Partes no pudiesen ponerse de acuerdo, una de las Partes puede solicitar a un tribunal de jurisdicción competente con autoridad sobre el lugar donde se llevará a cabo el arbitraje que nombrase un Árbitro neutral.

- **¿Quién paga el arbitraje?**

  Depende de quién entablase el reclamo. Si la Compañía iniciara el reclamo, pagará todos los costos del arbitraje. Si usted iniciara el reclamo, contribuirá con la que fuese la menor tarifa de presentación requerida por el proveedor de arbitraje o la tarifa de presentación para iniciar un reclamo ante el tribunal de jurisdicción general en el estado donde buscó empleo (si era solo un solicitante) o donde usted está o fue empleado por última vez por la Compañía y la Compañía pagará la diferencia. Además del monto de la tasa judicial, la Compañía pagará el árbitro y los costos administrativos del

arbitraje.

- **¿Necesito un abogado para someter mi reclamo a arbitraje?**

  No, no se le exige contar con un abogado durante el arbitraje. Puede contratar a un abogado si lo deseara.

- **Si decidiese contratar a un abogado, ¿cómo se le pagará a mi abogado?**

  Si decidiese utilizar un abogado para que lo ayudase en el arbitraje, por lo general, usted será responsable de pagar los honorarios del abogado en la primera instancia. En algunas circunstancias, las leyes le exigen a la Compañía pagar sus honorarios judiciales si usted prevaleciera en el arbitraje. Usted tendrá el mismo derecho a una adjudicación de honorarios de los abogados durante el arbitraje que en un tribunal.

- **¿Dónde se realizará el arbitraje?**

  El arbitraje tendrá lugar en el condado donde aplicó para el trabajo o trabajó (o donde hubiese trabajado por última vez) para la Compañía, salvo que ambas partes acordasen otro lugar.

- **¿Cómo podré recopilar pruebas para mi caso?**

  Tanto usted como la Compañía tienen el derecho de llevar a cabo alguna presentación de pruebas en el arbitraje conforme a los procedimientos establecidos en el acuerdo de arbitraje.

- **¿Cómo se inicia el arbitraje?**

  Usted o la Compañía pueden comenzar el arbitraje al enviar por correo postal una "Solicitud de arbitraje" escrita a la otra parte tan pronto como fuese posible luego de que hubiese surgido el reclamo y, a más tardar, en los plazos legales que se aplicarían en un tribunal. El envío debe hacerse por correo certificado o registrado, con solicitud de acuse de recibo. El aviso de un reclamo contra la Compañía se debe enviar a Dollar Tree/Family Dollar Arbitration Program, c/o Chief Legal Officer al domicilio 500 Volvo Parkway, Chesapeake, VA 23320. El aviso debe identificar y describir la índole de los reclamos que se realizan, los hechos sobre los cuales se basan los reclamos y la reparación o el recurso que se exige, incluido el valor monetario del monto de la controversia. Puede encontrar un Formulario de solicitud de arbitraje en www.dtarbitration.com.

- **Si la Compañía deseara demandarme, ¿puede acudir a un tribunal?**

  En general, no. La Compañía también está vinculada por el Acuerdo de arbitraje. Sin embargo, el Acuerdo de arbitraje proporciona ciertas circunstancias limitadas que permiten que usted o la Compañía fuesen a los tribunales. Por ejemplo, usted o la Compañía pueden presentar reclamos en un tribunal de reclamos menores o buscar una compensación equitativa temporal en los tribunales para ayudar al proceso de arbitraje.

- **¿Qué es una Oferta de sentencia?**

  Una oferta de sentencia es algo que un demandado puede usar para alentar a la otra parte a aceptar su oferta del acuerdo. Cuando un demandado hiciera una oferta de sentencia, la otra parte (el destinatario de la oferta) tiene 14 días para aceptar la oferta. Cualquier oferta no aceptada dentro de los 14 días se rechaza de manera automática. Si un destinatario de la oferta rechazara una oferta de sentencia y

luego no obtuviese una sentencia más favorable, entonces, el destinatario de la oferta debe pagar las costas incurridas por el demandado después de la fecha en que se hubiese hecho la oferta.

**Preguntas sobre los reclamos estipulados por el Acuerdo de arbitraje**

- **¿Qué controversias se estipulan en el Acuerdo de arbitraje?**

  El Acuerdo de arbitraje exige el arbitraje de todas las controversias entre usted y la Compañía que surgieran o se relacionaran con su relación laboral o el cese de esta, excepto conforme se describe a continuación o en el Acuerdo de arbitraje. Las disputas sujetas a arbitraje incluyen disputas entre usted y la Compañía, sus ejecutivos, directores, empleados o agentes, así como las disputas entre usted y los planes de beneficios de la Compañía o los patrocinadores, fiduciarios, administradores, afiliados y agentes de la Compañía.

  Las controversias que deben someterse a arbitraje abarcan, entre otras:

  - horas extras, clasificación errónea con respecto a la condición de exento, descansos, descanso para comidas, reembolso de gastos, pago por pánicos bancarios, trabajo fuera del horario de trabajo, salarios no pagados u otras remuneraciones;

  - condiciones laborales, incluida la distribución de los asientos;

  - represalias o discriminación;

  - incumplimiento contractual o ilícitos civiles;

  - planes de beneficios (con determinadas excepciones descritas a continuación);

  - propiedad intelectual, secretos comerciales o información confidencial.

- **¿Qué tipo de disputas <u>no</u> deben arbitrarse?**

  El Acuerdo de arbitraje no cubre determinados reclamos relevantes a su relación laboral con la Compañía, tales como:

  - una acción judicial de recurso de equidad provisional para asistir al arbitraje, cuando así lo dispusiesen las leyes;

  - los reclamos por indemnización laboral o beneficios del seguro de desempleo;

  - los reclamos que no pudiesen someterse a arbitraje conforme a la legislación vigente;

  - los reclamos por beneficios del empleado conforme a cualquier plan de beneficios patrocinado por la Compañía que estuviese (a) estipulado por la Ley de Garantía de Ingresos por Jubilación del Empleado (*Employee Retirement Income Security Act*) de 1974 o (b) financiado por el seguro;

  - los reclamos dentro de la jurisdicción de un tribunal de reclamos menores no pueden arbitrarse a menos que tanto la Compañía como usted aceptasen hacerlo y

  - los reclamos entablados ante un organismo administrativo, y los recursos adjudicados por este, si las leyes vigentes permitiesen que el organismo juzgase el reclamo

4

independientemente de la existencia de un Acuerdo de arbitraje. Tales reclamos administrativos incluyen los reclamos o cargos que se presentasen ante la Comisión de Igualdad de Oportunidades Laborales, el Departamento de Trabajo de los Estados Unidos de Norteamérica o la Junta Nacional de Relaciones Laborales.

**Otras preguntas sobre el arbitraje**

- **¿Puedo presentar, o participar en, una demanda colectiva sometida a arbitraje?**

  No, el Acuerdo de arbitraje estipula que los reclamos sometidos a arbitraje (incluidos los reclamos ante los tribunales menores) pueden proceder solo a título individual. No puede interponer ni participar en una demanda colectiva sometida a arbitraje.

- **¿Constituye la aceptación del arbitraje una renuncia a mi derecho a un juicio por jurado?**

  Sí. El Acuerdo estipula que las controversias se resuelvan mediante un árbitro. Tanto usted como la Compañía están renunciando al derecho a un tribunal, que no fuese un tribunal de reclamos menores, o un juicio por jurado. Uno de los motivos por los que el arbitraje por lo general cuesta menos que un juicio por jurado es que la preparación y los procesos de un juicio por jurado normalmente son más costosos y consumen más tiempo que el arbitraje.

- **¿Puedo apelar el fallo de un árbitro?**

  Tanto usted como la Compañía tienen un derecho muy limitado de apelar el fallo del árbitro. En la mayoría de los casos, el fallo del árbitro es definitivo y no se puede apelar. Debe consultar con un abogado si tiene alguna pregunta específica sobre sus derechos de apelación.

- **¿Qué sucede si un Tribunal decidiese que el Acuerdo de arbitraje nuevo es inaplicable?**

  Si por algún motivo se determinase que este Acuerdo no es válido, entonces, cualquier acuerdo de arbitraje previo entre Usted y la Compañía permanecerá vigente.

## <u>ACUERDO MUTUO PARA RECURRIR AL ARBITRAJE EN CASO DE RECLAMOS</u>

Este Acuerdo mutuo para recurrir a arbitraje en caso de reclamos (el "Acuerdo") celebrado entre la Compañía[1] y su postulante/empleado (el "Empleado") (en conjunto, las "Partes").

Las Partes reconocen que pueden surgir controversias entre ellas. Al celebrar este Acuerdo, las Partes convienen mutuamente renunciar a su derecho a un juicio ante un juez o jurado en un tribunal (salvo lo dispuesto más adelante) y el Empleado renuncia a cualquier derecho a presentar o formar parte de demandas colectivas o grupales. A cambio de ello, las Partes prevén obtener los beneficios que trae un arbitraje individual como procedimiento definitivo y vinculante para la resolución de las controversias.

Nada de lo contenido en este Acuerdo se interpretará como un impedimento para que el Empleado (a título individual o en conjunto con otros) o la Compañía utilizaran los procedimientos internos existentes de la Compañía para la resolución de las quejas.

1.      **Acuerdo de arbitraje:** salvo que se dispusiese algo diferente en este Acuerdo, las Partes aceptan resolver mediante arbitraje todos los reclamos o las controversias que surgieran o se relacionasen con la solicitud de empleo, la oferta o el rechazo de empleo, el posible empleo, el empleo o la finalización del empleo del Empleado o que se relacionasen o surgiesen de actos u omisiones que ocurriesen en las instalaciones de la Compañía, en eventos de la Compañía o en viajes de la Compañía, que la Compañía pudiese tener en contra del Empleado o que el Empleado pudiese tener en contra de cualquiera de los siguientes: (a) la Compañía, (b) sus ejecutivos, directores, empleados o agentes, (c) los planes de beneficios de la Compañía o los patrocinadores, fiduciarios, administradores, afiliados y agentes de los planes o (d) todos los sucesores y cesionarios de cualquiera de ellos y cuando el Empleado presentase un reclamo contra cualquier ejecutivo, director, empleado o agente de la Compañía (el "codemandado"), los reclamos que cualquiera de estos codemandados pudiese tener en contra del Empleado. Cada una de las personas físicas o jurídicas indicadas con anterioridad pueden exigir el cumplimiento de este Acuerdo.

2.      **Reclamos cubiertos:** los reclamos sujetos a arbitraje incluyen, entre otros, reclamos por los motivos siguientes: horas extras, error de clasificación respecto a estado exento, descansos, períodos para comer, rembolso de gastos, trabajo por fuera del horario establecido, salarios u otra compensación; condiciones laborales, incluidos los asientos; incumplimiento de contrato o pacto (tácito o explícito); ilícitos civiles extracontractuales (lo que incluye, entre otros, difamación relacionada con el proceso de solicitud o durante o después del empleo con la Compañía); despido improcedente; represalias o discriminación (lo que incluye, entre otros, discriminación

---

[1] La "Compañía" o "Dollar Tree" hace referencia a Dollar Tree, Inc. y cualquiera de sus subsidiarias directas o indirectas constituidas conforme a las leyes de los Estados Unidos de Norteamérica o un estado o jurisdicción de los Estados Unidos de Norteamérica que contratase al Empleado, lo que incluye, entre otros, a Family Dollar Stores, Inc., Dollar Tree Stores, Inc., Dollar Tree Distribution, Inc., Dollar Tree Management, LLC o Greenbrier International, Inc.

por raza, sexo, orientación sexual, religión, nacionalidad, edad, estado civil, discapacidad física o mental o condición médica); propiedad intelectual, información confidencial o secretos comerciales; todas las leyes de tipo laboral, las cuales incluyen, entre otros, el título VII, la Ley de Normas Laborales Justas (*Fair Labor Standards Act*), la Ley de Licencia por Motivos Familiares y Médicos (*Family and Medical Leave Act*), la Ley de Pago Equitativo (*Equal Pay Act*), la Ley de los Estadounidenses con Discapacidades (*Americans with Disabilities Act*), la Ley de Discriminación por Edad en el Empleo (*Age Discrimination in Employment Act*), la Ley de Protección de Beneficios de Trabajadores Mayores (*Older Workers Benefit Protection Act*), la Ley de Aviso para Ajuste y Capacitación Adicional de Trabajadores (*Adjustment and Retraining Notification Act*), la Ley de Seguridad de Ingresos de Jubilación para Empleados de 1974 (*Employee Retirement Income Security Act*, "ERISA") (a excepción de los reclamos por beneficios de empleados en virtud de cualquier plan de beneficios patrocinado por la Compañía en la medida en que los documentos del plan correspondientes establecieran un procedimiento diferente para la resolución de dichos reclamos) y cualquier otro reclamo que surgiera en virtud de cualquier ley, ordenanza, regulación, política pública o disposición de "common law" federal, estatal o local (salvo lo dispuesto más adelante). Si el Empleado trabajase en Texas o en cualquier otro estado donde la Compañía no participase en el sistema de indemnización laboral, todos los reclamos basados en "equity" o "common law" que se relacionasen con lesiones causadas en el trabajo están cubiertas por este Acuerdo.

El árbitro tendrá la autoridad exclusiva para resolver cualquier disputa o reclamo respecto a la posibilidad de someter a arbitraje o la formación, interpretación, validez, aplicabilidad, racionabilidad o posibilidad de exigir el cumplimiento de este Acuerdo o cualquier disposición de este, salvo que se dispusiese algo diferente en este documento.

3.   **Reclamos que _no_ se requieren someter a arbitraje en virtud de este Acuerdo:** este Acuerdo no requiere, de manera expresa, el arbitraje de lo siguiente:

   a.   los reclamos para indemnización por lesiones laborales o compensación por despido de los trabajadores; sin embargo, los reclamos por discriminación o represalias basadas en la solicitud de dichos beneficios están sujetas a arbitraje;

   b.   los reclamos que, por aplicación del derecho (después de aplicar los principios de prelación en la jerarquía legislativa [preemption principles] de la Ley Federal de Arbitraje [*Federal Arbitration Act*, "FAA"]), no pudiesen someterse a acuerdos de arbitraje previos a la controversia, como, por ejemplo, respecto a ciertos reclamos en virtud de la Ley Sarbanes-Oxley;

   c.   los reclamos dentro de la jurisdicción de, y presentadas de forma individual a, un tribunal para causas menores del estado en el que el Empleado se hubiese postulado para el empleo, trabajase o hubiese trabajado por última vez para la Compañía, lo que ocurriese en último lugar;

   d.   los reclamos por beneficios de empleados en virtud de cualquier plan de beneficios patrocinado por la Compañía y cubierto por la ley ERISA en la medida en que los documentos del plan correspondiente establecieran un procedimiento diferente para la resolución de dichos reclamos;

e.  los reclamos para los beneficios de los empleados en virtud de cualquier plan de beneficios patrocinado por la Compañía y financiado por un seguro y

f.  las acciones representativas para las sanciones civiles entabladas en virtud de la Ley General de los Abogados Privados de California (*California Private Attorneys General Act*), que solo pueden presentarse ante un tribunal de jurisdicción competente.

Independientemente de cualquier otro término de este Acuerdo, los reclamos pueden entablarse ante un organismo administrativo federal, estatal o local (y este puede otorgar recursos de reparación) si las leyes vigentes permitiesen que el organismo juzgase el reclamo. Tales reclamos administrativos incluyen, entre otros, los reclamos o cargos que se presentasen ante la Comisión para la Igualdad de Oportunidades en el Empleo, el Departamento de Trabajo de los Estados Unidos de Norteamérica o la Junta Nacional de Relaciones Laborales. Nada de lo contenido en este Acuerdo se interpretará como un impedimento o una excusa para que una parte interpusiese un reclamo administrativo ante ningún organismo con el fin de cumplir la obligación de la parte de agotar los recursos administrativos antes de realizar un reclamo sometido a arbitraje.

4.  **Órdenes judiciales de acción o abstención:** independientemente de cualquier otra estipulación de este Acuerdo, cada una de las Partes puede solicitar órdenes judiciales temporales de acción o abstención para contribuir con un procedimiento de arbitraje, cuando las leyes permitiesen acceder a este tipo de recursos, ante un tribunal de jurisdicción competente.  Si, en algún momento el Árbitro o un Administrador del arbitraje no exigiesen el cumplimiento de las estipulaciones de este Acuerdo, cada una de las Partes puede solicitar a un tribunal de jurisdicción competente que cesara el procedimiento de arbitraje y se suspenderá, de manera automática, el arbitraje a la espera del resultado de dicho procedimiento.

5.  **Renuncia a demandas colectivas y grupales:** en la medida más amplia que permitiesen las leyes, el Empleado y la Compañía acuerdan entablar cualquier controversia solo a título individual y no a título colectivo o grupal. Por consiguiente, en la máxima medida que lo permitiesen las leyes, no existirá derecho alguno ni autoridad alguna para que una controversia se interpusiese, entendiese o sometiese a arbitraje en calidad de demanda colectiva o grupal. Dicho de forma clara y contundente, un árbitro no tendrá autoridad para dirimir una demanda grupal o colectiva.

Independientemente de cualquier otra estipulación de este Acuerdo, un tribunal de jurisdicción competente (y no un árbitro) resolverá cualquier reclamo o controversia respecto a o que surgiese de la Renuncia a las demandas grupales y colectivas, lo cual incluye, entre otros, cualquier reclamo en el que se alegase que la Renuncia a las demandas grupales y colectivas es inaplicable, inexigible, irrazonable, inválido, ilegal, nulo o anulable. Las Partes acuerdan retrasar la presentación de cualquier demanda ante un Administrador de arbitraje o Árbitro a la espera de que se resolviese cualquier controversia que se relacionase o surgiese de la Renuncia a las demandas grupales y colectivas.

6.  **Restricciones de tiempo para iniciar un arbitraje:** las Partes convienen que se debe suministrar a la otra Parte una notificación por escrito sobre el inicio del procedimiento de arbitraje (una "Solicitud de arbitraje"), a más tardar, en el plazo establecido por el régimen de prescripciones correspondiente. De lo contrario, se considerará que se ha renunciado al reclamo

en la misma medida que sucedería si fuera ante un tribunal ordinario. Se insta a la Parte que entablase el reclamo a proporcionar una notificación por escrito de cualquier reclamo lo antes posible después del acontecimiento objeto de la controversia, de manera que el arbitraje pudiese llevarse a cabo de manera oportuna.

7.   **Notificación requerida de todos los reclamos:**  si fuera iniciada por la Compañía, la Solicitud de arbitraje o cualquier reconvención, deberá enviarse por correo registrado o certificado, con solicitud de acuse de recibo a la Compañía a la dirección siguiente: Dollar Tree Arbitration Program c/o Chief Legal Officer, 500 Volvo Parkway, Chesapeake, VA 23320.

Si el Empleado iniciara el arbitraje en contra de un ex ejecutivo, director, empleado o agente de la Compañía, entonces, para enviar la Solicitud de arbitraje a dicha persona, el Empleado deberá seguir los procedimientos de notificación de demanda de conformidad con las leyes del estado en el que se originó el reclamo del Empleado.

Si fuera iniciada por la Compañía, la Solicitud de arbitraje o cualquier reconvención, deberá enviarse por correo registrado o certificado, con solicitud de acuse de recibo al Empleado al último domicilio registrado en el perfil del Empleado de la compañía.

La Solicitud de arbitraje deberá ser firmada por la Parte que iniciara el procedimiento y en ella se identificará y describirá la índole de todos los reclamos afirmados, los hechos sobre los cuales se basan los reclamos, la reparación o el recurso que se exige, incluido el valor monetario del monto en controversia. Cualquier solicitud de órdenes judiciales de acción o abstención, decisión declarativa u honorarios de los abogados, no se contabilizarán respecto al cálculo del monto en controversia, a menos que en dicha orden judicial de acción o abstención o en dicha decisión declarativa se solicitase el pago de dinero. Se puede encontrar un formulario de Solicitud de arbitraje en www.dtarbitration.com.

8.   **Procedimientos de arbitraje:**

   a.   luego de que la Compañía hubiese recibido la Solicitud de arbitraje, las Partes deliberarán para determinar si desean participar en una mediación previa al arbitraje, mediante un mediador seleccionado de mutuo acuerdo. Si las Partes acordasen la mediación, esta se realizará a la brevedad. Las Partes convienen que se insta a la mediación como paso inicial en este proceso de resolución de controversias, pero la participación en la mediación es totalmente voluntaria.

   b.   Si las Partes optasen por no participar en una mediación previa al arbitraje o si la mediación no lograse resolver con éxito todos los reclamos de las Partes, el Empleado y la Compañía se reunirán y deliberarán para elegir un Administrador del arbitraje (o foro arbitral) o podrán elegir un árbitro individual y abstenerse de nombrar un Administrador del arbitraje.

   c.   A menos que las Partes aceptasen algo diferente, el Arbitraje se deberá desarrollar ante un solo árbitro, quien será (1) un funcionario judicial federal o estatal jubilado que haya presidido causas judiciales en el estado donde se llevará a cabo el arbitraje o (2) un abogado cuyo ejercicio profesional pasado o presente fuera de procedimientos

de arbitraje y mediación incluyese, en una parte sustancial, la legislación laboral o el objeto correspondiente de la controversia y que tuviese la licencia para ejercer el derecho en el estado en que se desarrollará el arbitraje (el "Árbitro").

d. Si las Partes no pudiesen ponerse de acuerdo sobre el foro arbitral o el Árbitro, una de las Partes puede solicitar a un tribunal de jurisdicción competente con autoridad sobre el lugar donde se llevará a cabo el arbitraje que nombrase un Árbitro neutral.

e. El arbitraje se deberá llevar a cabo de conformidad con este Acuerdo.

f. El Árbitro aplicará la ley sustantiva (y la ley de recursos, según correspondiese) del estado en que se originó el reclamo o la ley federal, según correspondiese, para los reclamos presentados. El Árbitro no tiene competencia para aplicar ninguna otra ley sustantiva o ley de recursos de reparación.

g. Se aplicarán las Normas probatorias federales y un enlace a estas normas puede encontrarse en www.dtarbitration.com.

h. El Árbitro considerará las solicitudes dispositivas, lo que incluye, entre otras, una solicitud para desestimar o una solicitud de sentencia sumarial de cualquier Parte y aplicará las normas que rigen tales solicitudes en virtud de las Normas federales del procedimiento civil. Un enlace a estas normas puede encontrarse en www.dtarbitration.com.

i. A pedido, se le brindará a cualquiera de las Partes el permiso para presentar un escrito posterior a la audiencia.

j. El Árbitro emitirá un laudo arbitral y una opinión por escrito de la forma habitual en los arbitrajes laborales y de empleo, por lo general, a más tardar, a los treinta (30) días posteriores a la fecha de conclusión de la audiencia de arbitraje o en que se hubiesen recibido los escritos posteriores a la audiencia (de solicitarse), lo que ocurriese con posterioridad. La opinión incluirá el fundamento de hecho y de derecho esencial para el laudo. Cualquiera de las Partes podrá entablar una acción judicial ante cualquier tribunal con jurisdicción competente para imponer el arbitraje en virtud de este Acuerdo, así como para exigir, confirmar, modificar, corregir o anular un laudo arbitral conforme a lo dispuesto por las leyes.

9. **Buena fe y oferta de sentencia:**

a. Buena fe: las Partes convienen que todos los procedimientos presentados en virtud de este Acuerdo se presentarán de buena fe. Al presentar una Solicitud de arbitraje, solicitud por escrito u otro documento, ya sea al firmarlo, registrarlo, enviarlo o proponerlo con posterioridad, la Parte y el representante de la Parte aceptan que se les aplicarán los requisitos de la Regla federal sobre procedimiento civil número 11 y que el árbitro tiene la autoridad para imponer y podrá imponer sanciones en la misma medida en que pudiese hacerlo un tribunal ordinario por infracciones a la Regla 11.

b.   Oferta de sentencia: la Regla federal de procedimiento civil 68 se aplicará a cualquier oferta de sentencia hecha en o ante cualquier procedimiento arbitral presentado en relación con este Acuerdo.

10.   **Representación:** cualquier Parte podrá ser representada por un abogado en el arbitraje.

11.   **Consolidación:** en ninguna circunstancia, los reclamos presentados por diferentes Empleados se podrán consolidar en un arbitraje, a menos que todas las Partes otorgasen su consentimiento por escrito para ello.

12.   **Presentación de pruebas y citaciones judiciales:** cada Parte, como mínimo, tendrá el derecho de interrogar a una persona y a todos los testigos periciales designados por las otras Partes. Cada Parte también tendrá el derecho de presentar solicitudes para la entrega de documentos a las otras Partes. Cualquier presentación adicional de pruebas puede ser realizada por mutuo acuerdo de las Partes o en caso de que el Árbitro seleccionado así lo dispusiese conforme a la solicitud presentada por una Parte tras demostrar que dicha presentación de pruebas adicional es justamente necesaria para arbitrar la controversia, en base al deseo de las Partes de tener un mecanismo de resolución de controversias relativamente económico. Las Partes tendrán derecho a obtener una citación de testigos y documentos en la medida que lo permitiesen las leyes, sujeto a cualquier limitación que impusiese el Árbitro por un motivo justificado.

13.   **Lugar del arbitraje:** el arbitraje tendrá lugar en el condado (o la unidad gubernamental comparable) en el que el Empleado se hubiese postulado para el empleo, trabajase o hubiese trabajado por última vez para la Compañía, lo que ocurriese en último lugar, salvo que todas las Partes conviniesen algo diferente por escrito.

14.   **Costos y honorarios del arbitraje:** la Compañía se hará responsable de pagar todas las tasas judiciales y los honorarios y costos del Árbitro y del foro de arbitraje; no obstante, siempre que, si el Empleado fuese la Parte que hubiese entablado el reclamo, el Empleado aportará el monto que fuese menor entre la tasa judicial requerida por el foro de arbitraje o la tasa judicial para entablar un reclamo ante el tribunal de jurisdicción general del estado en el que el Empleado se hubiese postulado para el empleo, trabajase o hubiese trabajado para la Compañía, lo que ocurriese con posterioridad y esta última pagará la diferencia.

Cada Parte pagará en primera instancia sus propios costos de litigio y los honorarios de los abogados, si los hubiera. No obstante, si alguna Parte prevaleciera con respecto a un reclamo que le proporcionase a la Parte vencedora los honorarios de los abogados y las costas judiciales o si existiese un acuerdo por escrito que estableciera el pago de los honorarios de abogados o las costas judiciales, el Árbitro dictará una decisión sobre la solicitud de los honorarios de los abogados o las costas judiciales conforme a las mismas normas que aplicaría un tribunal en virtud de la legislación vigente para los reclamos en cuestión.

15.   **Derecho aplicable:** las Partes acuerdan, en la medida más amplia que permitiesen las leyes, que el art. 1 y siguientes, título 9 de la Ley Federal de Arbitraje (*Federal Arbitration Act*,

FAA) regirán la interpretación y ejecución de este Acuerdo y regirán todos los procedimientos relacionados con este Acuerdo. Si, por algún motivo no se aplicase la FAA, entonces, se aplicará la ley de arbitraje del estado en que el Empleado se hubiese postulado para el trabajo o hubiese trabajado para la Compañía (lo que hubiese ocurrido en último lugar).

16.      **Comercio interestatal:** el Empleado conviene que la Compañía realiza transacciones que involucran un comercio interestatal y que la solicitud de empleo del Empleado o su empleo se relacionan con dichas transacciones interestatales.

17.      **Vigencia:** este Acuerdo seguirá vigente tras la finalización de la solicitud de empleo del Empleado, de la relación laboral del Empleado y el vencimiento de cualquier plan de beneficios.

18.      **Empleo a voluntad:** este Acuerdo no crea un compromiso de empleo por ningún período. El Empleado comprende que, si se le contratase, permanecerá contratado "a voluntad" y que tanto el Empleado como la Compañía podrán finalizar la relación laboral del Empleado en cualquier momento.

19.      **Acuerdo completo:** este Acuerdo es el acuerdo pleno y completo en relación con la resolución formal de las controversias entre las Partes y remplaza cualquier acuerdo de arbitraje previo entre las Partes, salvo en lo que respecta a cualquier reclamo en cuestión en un caso (presentado de forma individual o en un proceso grupal o colectivo, independientemente de que se hubiese certificado un grupo en dicho caso o no) que figurase en los expedientes de un tribunal o por el cual se hubiese entregado a la otra Parte una solicitud de arbitraje el 23 de octubre de 2020. En tal caso, el acuerdo de arbitraje vigente al momento de dicho registro o notificación se aplicará única y exclusivamente a dichos reclamos. Sin embargo, si por algún motivo se determinase que este Acuerdo no es válido, entonces, cualquier acuerdo de arbitraje previo entre las Partes permanecerá vigente. Ninguna Parte se basa en declaraciones, orales o escritas, correspondientes al objeto de este Acuerdo, que no se hubiesen establecido de manera específica en este Acuerdo.

20.      **Interpretación y divisibilidad:** si se determinase que alguna estipulación de este Acuerdo es nula, anulable o carece de validez por algún otro motivo, en forma total o parcial, dicha decisión no alterará la validez del resto del Acuerdo y todas las demás estipulaciones preservarán su plena validez y vigencia en base a la intención mutua de las Partes de crear un acuerdo vinculante para arbitrar sus controversias.

21.      **Contraprestación:** los compromisos de la Compañía y del Empleado de someter las controversias a arbitraje, en lugar de llevarlas a juicio ante tribunales u otros organismos, constituyen una contraprestación mutua. Asimismo, la consideración que hace la Compañía de la solicitud de empleo del Empleado, cualquier oferta de empleo por parte de la Compañía al Empleado, cualquier empleo otorgado conforme a dicha oferta, y el empleo continuo quedan supeditados a este Acuerdo y constituyen una contraprestación de dicho Acuerdo.

22.      **Fecha de entrada en vigencia:** la Fecha de entrada en vigencia de este Acuerdo es el 10 de diciembre de 2020.

EL EMPLEADO RECONOCE QUE HA LEÍDO DETENIDAMENTE ESTE ACUERDO Y QUE COMPRENDE SUS TÉRMINOS, QUE TODOS LOS CONVENIOS Y ACUERDOS ENTRE LAS PARTES CON RESPECTO A LOS ASUNTOS ESTIPULADOS EN EL ACUERDO ESTÁN INCLUIDOS EN ESTE Y QUE EL EMPLEADO HA CELEBRADO EL ACUERDO DE MANERA VOLUNTARIA Y SIN BASARSE EN NINGUNA PROMESA O DECLARACIÓN DE LA COMPAÑÍA QUE NO FUESEN LAS CONTENIDAS EN ESTE ACUERDO.

ASIMISMO, EL EMPLEADO RECONOCE QUE SE LE HA BRINDADO LA OPORTUNIDAD DE DISCUTIR ESTE ACUERDO CON SU ABOGADO PARTICULAR Y QUE LO HA HECHO EN LA MEDIDA QUE LO DESEARA.

LAS PARTES COMPRENDEN QUE, (SALVO LO DISPUESTO CON ANTERIORIDAD) RENUNCIAN AL DERECHO DE JUICIO EN UN TRIBUNAL CON UN JUEZ O POR JURADO EN LO QUE RESPECTA A LOS RECLAMOS CUBIERTOS POR ESTE ACUERDO.

DOLLAR TREE, INC.


Firma: _____
         Michael A. Witynski
         Presidente y CEO

# EXHIBIT B

Redacted

| STALLINGS | CRYSTAL | ████████ | | | MORENO VALLEY | CA | 92553-5700 |

Redacted

Redacted

| SIMMONS | YVETTE | ████████████ | | LAKE ELSINORE | CA | 92530-5377 |
|---------|--------|--------------|--|---------------|----|-----------| 

Redacted

Redacted

| LEE | ASHLEY | ▉▉▉▉▉▉▉ | | | LOS ANGELES | CA | 90002-1705 |

Redacted

# EXHIBIT C

# JAMS Employment Arbitration Rules & Procedures

Effective June 1, 2021

Local Solutions. Global Reach.®



# JAMS Employment Arbitration Rules & Procedures

**Founded in 1979, JAMS is the largest private provider of alternative dispute resolution (ADR) services worldwide.** Our neutrals resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

**JAMS mediators and arbitrators are full-time neutrals** who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct. Whether they are conducting in-person, remote or hybrid hearings, JAMS neutrals are adept at managing the resolution process.

**Effective June 1, 2021, these updated Rules reflect the latest developments in arbitration.** They make explicit the arbitrator's full authority to conduct hearings in person, virtually or in a combined form, and with participants in more than one geographic location. They also update electronic filing processes to coordinate with **JAMS Access**, our secure, online case management platform.



### Summary of Revisions to the Employment Rules

Scan this code with your smartphone for a complete list of all changes.

## Additional Employment Arbitration Resources



### JAMS Employment Arbitration Minimum Standards

Scan for our policy on the use of arbitration for resolving employment-related disputes.



### Sample Employment Contract Clauses

Scan for guidance on drafting an employment dispute resolution program and contract clause language.



### JAMS Employment Practice Group

Scan to learn more about our experienced employment neutrals.



### Virtual & Hybrid ADR

Scan to learn about our concierge-level client services, including **Virtual ADR Moderators** and **premium technology**.

## jamsadr.com • 800.352.5267

# Table of Contents

**RULE 1**   Scope of Rules. . . . . . . . . . . . . . . . . . . . . . .4

**RULE 2**   Party Self-Determination. . . . . . . . . . . . . . .4

**RULE 3**   Amendment of Rules. . . . . . . . . . . . . . . . . . .4

**RULE 4**   Conflict with Law . . . . . . . . . . . . . . . . . . . . . .4

**RULE 5**   Commencing an Arbitration . . . . . . . . . . . .4

**RULE 6**   Preliminary and
Administrative Matters. . . . . . . . . . . . . . . . .5

**RULE 7**   Number and Neutrality of
Arbitrators; Appointment
and Authority of Chairperson. . . . . . . . . . .6

**RULE 8**   Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**RULE 9**   Notice of Claims . . . . . . . . . . . . . . . . . . . . . .7

**RULE 10**  Changes of Claims. . . . . . . . . . . . . . . . . . . .7

**RULE 11**  Interpretation of Rules
and Jurisdictional Challenges. . . . . . . . . . .7

**RULE 12**  Representation . . . . . . . . . . . . . . . . . . . . . . .7

**RULE 13**  Withdrawal from Arbitration. . . . . . . . . . . .8

**RULE 14**  *Ex Parte* Communications. . . . . . . . . . . . . .8

**RULE 15**  Arbitrator Selection, Disclosures
and Replacement. . . . . . . . . . . . . . . . . . . . .8

**RULE 16**  Preliminary Conference . . . . . . . . . . . . . . .9

**RULE 17**  Exchange of Information . . . . . . . . . . . . . .9

**RULE 18**  Summary Disposition
of a Claim or Issue . . . . . . . . . . . . . . . . . . .10

**RULE 19**  Scheduling and Location of Hearing . . . .10

**RULE 20**  Pre-Hearing Submissions . . . . . . . . . . . . .10

**RULE 21**  Securing Witnesses and Documents
for the Arbitration Hearing . . . . . . . . . . . .11

**RULE 22**  The Arbitration Hearing . . . . . . . . . . . . . . .11

**RULE 23**  Waiver of Hearing. . . . . . . . . . . . . . . . . . . .12

**RULE 24**  Awards. . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**RULE 25**  Enforcement of the Award. . . . . . . . . . . . .13

**RULE 26**  Confidentiality and Privacy. . . . . . . . . . . .13

**RULE 27**  Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**RULE 28**  Settlement and Consent Award. . . . . . . .14

**RULE 29**  Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**RULE 30**  Disqualification of the
Arbitrator as a Witness or
Party and Exclusion of Liability . . . . . . . . .14

**RULE 31**  Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**RULE 32**  Bracketed (or High-Low)
Arbitration Option. . . . . . . . . . . . . . . . . . . .15

**RULE 33**  Final Offer (or Baseball)
Arbitration Option. . . . . . . . . . . . . . . . . . . .15

**RULE 34**  Optional Arbitration
Appeal Procedure. . . . . . . . . . . . . . . . . . . .15

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949.224.1810.*

## RULE 1
## Scope of Rules

(a)   The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b)   The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)   The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d)   JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e)   The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f)   "Electronic filing" (e-filing) means the electronic transmission of documents to JAMS for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents to a party, attorney or representative under these Rules.

## RULE 2
## Party Self-Determination

(a)   The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum

Standards of Procedural Fairness and Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b)   When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance with JAMS Rules.

## RULE 3
## Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## RULE 4
## Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## RULE 5
## Commencing an Arbitration

(a)   The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i)   A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii)   A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii)   A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv)  The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or

(v)  A copy of a court order compelling Arbitration at JAMS.

(b)  The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties together with evidence that the Demand for Arbitration has been served on all Parties.

(c)  If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirement, such as the statute of limitations; any contractual limitations period; or any claims notice requirement. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rules 3, 13(a), 17(a) and 31(a)).

## RULE 6
## Preliminary and Administrative Matters

(a)  JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)  If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c)  If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d)  JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e)  Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i)  If a Party files more than one Arbitration with JAMS, JAMS may consolidate two or more of the Arbitrations into a single Arbitration.

(ii)  Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii)  Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f)   Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## RULE 7
## Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a)   The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b)   In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed, in advance of the Arbitration Hearing, to produce documents.

(c)   Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## RULE 8
## Service

(a    JAMS or the Arbitrator may at any time require electronic filing and service of documents in an Arbitration, including through the JAMS Electronic Filing System. If JAMS or the Arbitrator requires electronic filing and service, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of documents and notifications.

Any document filed via the JAMS Electronic Filing System shall be considered as filed when the transmission to the JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date.

(b)   Every document filed with the JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to the JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney.

(c)   Delivery of e-service documents through the JAMS Electronic Filing System shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through the JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service or JAMS completes the transmission of the electronic document(s) to the JAMS Electronic Filing System for e-filing and/or e-service.

(d)   If an electronic filing and/or service via the JAMS Electronic Filing System does not occur due to technical error in the transmission of the document, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed and/or served nunc pro tunc to the date it was first attempted to be transmitted electronically. In such cases a Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e)   For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f)   In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period. If the last day for the performance of any act that is required by these rules to be performed within a specific time

falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday.

## RULE 9
## Notice of Claims

(a)   Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b)   Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c)   Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have. JAMS may grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the Arbitrator.

(d)   Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e)   Any claim or counterclaim to which no response has been served will be deemed denied.

(f)   Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## RULE 10
## Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## RULE 11
## Interpretation of Rules and Jurisdictional Challenges

(a)   Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b)   Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c)   Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d)   The Arbitrator may, upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## RULE 12
## Representation

(a)   The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone number and

email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)   Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone number and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

(c)   The Arbitrator may withhold approval of any intended change or addition to a Party's legal representative(s) where such change or addition could compromise the ability of the Arbitrator to continue to serve, the composition of the Panel in the case of a tripartite Arbitration or the finality of any Award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitrator shall have regard to the circumstances, including the general principle that a Party may be represented by a legal representative chosen by that Party, the stage that the Arbitration has reached, the potential prejudice resulting from the possible disqualification of the Arbitrator, the efficiency resulting from maintaining the composition of the Panel (as constituted throughout the Arbitration), the views of the other Party or Parties to the Arbitration and any likely wasted costs or loss of time resulting from such change or addition.

## RULE 13
## Withdrawal from Arbitration

(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b)   A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## RULE 14
## *Ex Parte* Communications

(a)   No Party may have any ex parte communication with a neutral Arbitrator, except as provided in section (b) of this

Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b)   A Party may have ex parte communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c)   The Parties may agree to permit more extensive ex parte communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## RULE 15
## Arbitrator Selection, Disclosures and Replacement

(a)   Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b)   If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and at least ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c)   Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)   If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many

members of the tripartite panel as are necessary to complete the panel.

(e)   If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection, considering such factors as whether they are represented by the same attorney and whether they are presenting joint or separate positions at the Arbitration.

(g)   If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h)   Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties and their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i)   At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final

determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j)   Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party that did not appoint that Arbitrator.

## RULE 16
## Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)   The exchange of information in accordance with Rule 17 or otherwise;

(b)   The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)   The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d)   The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e)   The attendance of witnesses as contemplated by Rule 21;

(f)   The scheduling of any dispositive motion pursuant to Rule 18;

(g)   The premarking of exhibits, the preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h)   The form of the Award; and

(i)   Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## RULE 17
## Exchange of Information

(a)   The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information

("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b)    Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

(c)    As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d)    The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

(e)    The Parties may take discovery of third parties with the approval of the Arbitrator.

## RULE 18
## Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case.

## RULE 19
## Scheduling and Location of Hearing

(a)    The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b)    If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c)    The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena duces tecum to a third-party witness.

## RULE 20
## Pre-Hearing Submissions

(a)    Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits

intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b)   The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## RULE 21
## Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena duces tecum shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## RULE 22
## The Arbitration Hearing

(a)   The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual party with information about a significant issue.

(b)   The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)   The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d)   Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)   The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony, even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Arbitrator has full authority to determine that the Hearing, or any portion thereof, be conducted in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form. If some or all of the witnesses or other participants are located remotely, the Arbitrator may make such orders and set such procedures as the Arbitrator deems necessary or advisable.

(h)   When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator,

to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i)   At any time before the Award is rendered, the Arbitrator may, sua sponte or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)   Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. No other means of recording the proceedings shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

   (i)   The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

   (ii)   If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

   (iii)   If the Parties agree to the Optional Arbitration Appeal Procedure (see Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing.

   (iv)   The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## RULE 23
## Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## RULE 24
## Awards

(a)   The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)   Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c)   In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d)   In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)   Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)   The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an

allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g)   The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h)   The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an Arbitration Agreement that is required as a condition of employment.

(i)   After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j)   Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and file with JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31 or on account of the effect of an offer to allow judgment), or the Arbitrator may sua sponte propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file and serve any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k)   The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or

a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Award.

## RULE 25
## Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, et seq., or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## RULE 26
## Confidentiality and Privacy

(a)   JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b)   The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)   Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## RULE 27
## Waiver

(a)   If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b)   If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## RULE 28
### Settlement and Consent Award

(a)   The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b)   The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c)   If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## RULE 29
### Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## RULE 30
### Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)   The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)   The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c)   The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## RULE 31
### Fees

(a)   Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)   JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c)   If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an Employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities or individuals are adverse for purpose of fees, considering such factors as whether the entities or individuals are represented by the same attorney and whether the entities or individuals are presenting joint or separate positions at the Arbitration.

## RULE 32
## Bracketed (or High-Low) Arbitration Option

(a)   At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b)   JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)   The Arbitrator shall render the Award in accordance with Rule 24.

(d)   In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## RULE 33
## Final Offer (or Baseball) Arbitration Option

(a)   Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)   If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c)   If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d)   Other than as provided herein, the provisions of Rule 24 shall be applicable.

## RULE 34
## Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

jamsadr.com • 800.352.5267